# EXHIBIT A

ABRAHAM MATHEW, SBN 181110
abraham@mathewandgeorge.com
JACOB GEORGE, SBN 213612
jacob@mathewandgeorge.com
SANG J PARK, SBN 232956
sang@mathewandgeorge.com
MATHEW & GEORGE
500 South Grand Avenue, Suite 1490
Los Angeles, California 90071
Telephone:    (310) 478-4349
Fax:          (310) 478-9580

Attorneys for Plaintiff

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 3 0 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| JOO LEE, | Case No.: **BC 6 25 6 6 6** |
|---|---|
| Plaintiff, | **COMPLAINT** |
| vs. | (1)   Retaliation & Wrongful Termination in Violation of Lab. Code § 1102.5; |
| RAYTHEON COMPANY, a Delaware company; and DOES 1 through 10, | (2)   Wrongful Termination in Violation of Public Policy |
| Defendants. | **DEMAND FOR JURY TRIAL** |

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

COMPLAINT

## JURISIDICTION AND VENUE

1.      Jurisdiction is proper in this Court by virtue of the California statutes, decisional law and regulations, and the local rules under the Los Angeles County Superior Court Rules.

2.      Venue in this Court is proper in that Raytheon Company has a principal place of business in Los Angeles County.

## PARTIES

3.      At all times Plaintiff is and has been a resident of Los Angeles County.

4.      Raytheon Company is and, at all times herein mentioned, has been a Delaware company with the capacity to sue, and to be sued, in Los Angeles County.

5.      Plaintiff is informed and believes and alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within the scope and purpose of said agency and employment. Plaintiff further alleges that each Defendant—whether named or referred to as a fictitious name—supervised, ratified, controlled, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions of each remaining Defendant.

6.      The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names.  Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

///

///

///

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

## FACTUAL ALLEGATIONS

7.    Raytheon Company ("Raytheon" or "Defendants") employed Plaintiff Joo Lee as an Engineer from 1998 to June 16, 2015.  Plaintiff last earned $158,000 a year.

**Plaintiff was an outstanding employee for nearly two decades**

8.    During his 18 year tenure at Raytheon, Plaintiff consistently received excellent performance reviews and attendant pay increases.  Just three months before his termination, and in recognition of Plaintiff's invaluable contributions to Raytheon's performance, Plaintiff received his latest "excellent" performance rating and pay raise.  As always, Raytheon thanked Plaintiff for his "efforts and contributions in ensuring Raytheon's success."  Needless to say, Plaintiff was an outstanding employee that performed well until the very end.

**Raytheon instructs Plaintiff to commit timecard fraud by underreporting his hours**

9.    Raytheon is a self-proclaimed industry leader in defense and government electronics providing space, information technology, and technical services and support to the warfighter of the U.S. Armed Services and other domestic and international customers.  The U.S. Government is Raytheon's main customer.

10.    According to its mission statement, Raytheon is "committed to the principles of accurate labor recording as time worked on government programs are charged to the government and Raytheon and its employees have a legal obligation to ensure accurate recording of time."

11.    Additionally Raytheon's Code of Conduct states that "accurately charging labor, material, and other costs is essential to maintaining the integrity of customer billings, financial reporting, and planning.  Deliberate mischarging of work time or timecard fraud violates Company policy and law....Where a U.S. Government contract is affected by such mischarging, the Company is obligated by the Federal Acquisition Regulations to disclose its finding to the appropriate Inspector General."

12.    In short, Raytheon works on government contracts.  And Raytheon has to accurately account for their time billed to the government.  However, and for years, Raytheon pressured Plaintiff and other employees to commit "timecard" fraud.

1   · 13.   As a Senior Principal Engineer, Plaintiff worked well over 40 hours a week on a

2   project.  Yet Raytheon instructed Plaintiff to report 40 hours a week only, regardless of the

3   number of hours he actually worked.  In response to Plaintiff's complaints, Raytheon told him:

4   "You make a lot of money....We regard you as a senior member and we expect you to work."

5        14.   Raytheon also instructed Plaintiff to *deduct* 30 minutes from his reporting.

6   Again, and in response to Plaintiff's complaints, Raytheon told him that, "this is to make up for

7   time used for restroom and coffee breaks, you know, 'inefficiency time....'"

8        15.   Raytheon put Plaintiff in charge of its Goleta project, and it required Plaintiff to

9   travel from its El Segundo office to Goleta, California two to three times a week.  Although

10  Plaintiff worked nearly 12-hour days—that included a four-hour roundtrip commute to Golita—

11  Raytheon told Plaintiff to report nine hours of work only.

12       16.   Plaintiff complained to his supervisors that a nine-hour Golita work day is

13  impossible, especially given the commute time.  Raytheon told Plaintiff, "that's your problem,"

14  and, "you can only charge nine hours."

15  **Raytheon's instructing Plaintiff to underreport his hours deprived him of promised wages**

16       17.   Plaintiff's compensation plan required Raytheon to provide him with additional

17  pay—at his regular hourly rate—for work over 48 hours in a week.  Yet Raytheon instructed

18  Plaintiff to underreport his hours to deprive him of his promised pay.

19       18.   Plaintiff complained to his supervisors about his promised wages, but Raytheon

20  just repeatedly hassled Plaintiff that he made too much money.

21       **Raytheon fires Plaintiff immediately after he blows the whistle**

22       19.   In late May 2015 Plaintiff formally complained to Raytheon's Human Resources

23  about the underreporting of his hours, timecard fraud, and his promised pay.

24       20.   On May 28, 2015 Plaintiff met with Raytheon's Human Resources Manager,

25  Megan Weiss, about his complaints.

26       21.   Less than 48-hours later, on June 1, 2015, Weiss told Plaintiff that his charges

27  were "unfounded and untrue."  Raytheon clearly failed to conduct a good faith investigation

28  about Plaintiff's complaints given the quick 48-hour turnaround.  Also Raytheon failed to

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

1  interview Plaintiff's supervisor involved in the timecard fraud because he was away on vacation

2  at that time.  Raytheon exercised bad faith in handling Plaintiff's complaints.

3        22.    Further Raytheon failed to disclose Plaintiff's complaints to the appropriate

4  Inspector General pursuant to the Federal Acquisition Regulations.

5        23.    On June 16, 2015, and after nearly twenty-years of dedicated employment,

6  Raytheon terminated Plaintiff.  Raytheon terminated Plaintiff in retaliation for his complaints

7  about underreporting his hours, timecard fraud, and his promised pay ("Protected Activity").

8                        **FIRST CAUSE OF ACTION**

9               **Retaliation and Wrongful Termination in Violation of**

10      **California Labor Code § 1102.5—Whistleblower Protection Act**

11                     **(Plaintiff against all Defendants)**

12       24.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

13       25.    At all times set forth in this Complaint, Plaintiff was an employee of Raytheon

14  and DOES 1-10 and was protected by California Labor Code § 1102.5.

15       26.    At all times set forth in this Complaint, California Labor Code § 1102.5 was in

16  effect and provides, in part, that:

17            "(a)    An employer may not make, adopt, or enforce any rule, regulation, or policy

18                    preventing an employee from disclosing information to…a person with

19                    authority over the employee, or to another employee who has authority to

20                    investigate, discovery, or correct the violation of noncompliance…where the

21                    employee has reasonable cause to believe that the information discloses a

22                    violation of state or federal statute, or a violation or noncompliance with a

23                    local, state or federal rule or regulation….

24            (b)     An employer may not retaliate against an employee for disclosing

25                    information to…a person with authority over the employee, or to another

26                    employee who has authority to investigate, discovery, or correct the violation

27                    of noncompliance…where the employee has reasonable cause to believe that

28                    the information discloses a violation of state or federal statute, or a violation or

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

1    noncompliance with a local, state or federal rule or regulation....

2        (c)    An employer may not retaliate against an employee for refusing to participate in

3    an activity that would result in a violation of state or federal statute, or a violation

4    or noncompliance with a local, state or federal rule or regulation.

5        (d)    An employer may not retaliate against an employee for having exercised his or her

6    rights under subdivision (a), (b), or (c) in any former employment."

7        27.    As detailed above, Plaintiff engaged in his Protected Activity.  Less than two

8    weeks after his Protected Activity, Raytheon terminated Plaintiff.

9        28.    Plaintiff's Protected Activity was the cause of Raytheon's decision to terminate

10   Plaintiff's employment.

11       29.    By terminating Plaintiff's employment in retaliation for his Protected Activity,

12   and as otherwise may be discovered, Defendants violated California Labor Code § 1102.5.

13       30.    Defendants acted with malice, oppression, and fraud and in conscious disregard

14   for Plaintiff's rights under the law, by violating California Labor Code § 1102.5, et seq. as is set

15   forth throughout this Complaint.

16       31.    As a direct and proximate result of Defendants' malicious, oppressive,

17   fraudulent, and despicable violations of California Labor Code § 1102.5, et seq. as set forth

18   herein, Plaintiff has suffered and continues to suffer general and special damages, the need for

19   punitive damages, including, but not limited to the following:

20       (a)    Damages for severe, excruciating and traumatic emotional distress and

21   physical manifestations of the emotional distress and exacerbation of

22   those injuries and symptoms, all in an amount to be determined by the

23   jury at the trial of this matter;

24       (b)    Damages for past loss of earnings, bonuses and benefits, in spite of

25   continuing attempts at mitigating damages, with such damages increasing

26   each day, plus interest in an amount to be determined by the jury at the

27   trial of this matter;

28       (c)    Damages for future loss of earnings, bonuses and benefits, in spite of

*MATHEW & GEORGE*
*500 SOUTH GRAND AVENUE, SUITE 1490*
*LOS ANGELES, CALIFORNIA 90071*

COMPLAINT

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

1  continuing attempts at mitigating damages, in an amount to be determined

2  by the jury at the trial of this matter;

3  (d)  Damages for consequential financial losses and additional emotional

4  distress damages, increasing with each day in an amount to be determined

5  by the jury at the trial of this matter; and

6  (e)  The wrongful conduct of Defendants described above was intended by

7  Defendants, and each of them, to cause injury to Plaintiff and was

8  despicable, mean, and vile conduct carried on by Defendants with a

9  willful and conscious disregard of the rights of Plaintiff, subjecting him to

10  cruel and unjust hardship, and was an intentional misrepresentation and

11  concealment of material facts known to Defendants with the intent to

12  deprive Plaintiff of property, legal rights, or to otherwise cause injury,

13  such as to constitute malice, oppression, and/or fraud under Civil Code

14  section 3294, thereby entitling Plaintiff to punitive damages in an amount

15  sufficient to punish the Defendants or to make an example of Defendants

16  to prevent such conduct by others.

17  ## SECOND CAUSE OF ACTION

18  **Wrongful Termination in Violation of Public Policy**

19  **(Plaintiff against all Defendants)**

20  32.  Plaintiff incorporates all paragraphs above as though fully set forth herein.

21  33.  At all times herein mentioned in this complaint, California Labor Code §§ 1102.5

22  and 98.6 were in full force and effect and were binding on the Defendants, and the Defendants

23  were subject to their terms.  Defendants were required to refrain from violations of public

24  policy, including terminating Plaintiff in retaliation for his Protected Activity.

25  34.  Plaintiff performed competently and capably during his employment with

26  Defendants.  Nevertheless, as detailed above, Plaintiff was wrongfully terminated by

27  Defendants, and each of them, because of his Protected Activity.

28  35.  Defendants' above described conduct is in violation of various statutes and the

1 | decisional law of this state and country, including but not limited, California Labor Code §§

2 | 1102.5 and 98.6.

3 |      36.     As a direct and legal result of Defendants' discrimination and retaliatory actions

4 | against Plaintiff, Plaintiff has suffered and continues to suffer general, consequential and special

5 | damages including but not limited to substantial losses in earnings, other employment benefits,

6 | physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future

7 | medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

8 |      37.     Said termination was wrongful and justifies the imposition of punitive damages

9 | since the termination was against public policy. Defendants intentionally discriminated and

10 | retaliated against Plaintiff on account of his protected activity, and in doing so, Defendants

11 | acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring

12 | Plaintiff. Based upon the foregoing, Plaintiff is entitled to recover punitive damages from

13 | Defendants and each of them, in an amount according to proof.

14 | **PRAYER FOR RELIEF**

15 | Plaintiff prays for relief against Defendants, jointly and severally, as follows:

16 |      1.     For special damages, including but not limited to, lost earnings, benefits and/or

17 | out-of-pocket expenses in an amount according to proof at the time of trial, all in an amount set

18 | forth above and/or according to proof at the time of trial;

19 |      2.     For further special damages, including but not limited to, lost future earnings,

20 | benefits and other prospective damages in an amount set forth above and/or according to proof

21 | at the time of trial;

22 |      3.     For general damages in an amount set forth above and/or according to proof at

23 | the time of trial;

24 |      4.     For punitive and exemplary damages in an amount according to proof at the time

25 | of trial;

26 |      5.     For interest;

27 |      6.     For reasonable attorneys' fees;

28 |      7.     For costs of suit; and

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

Page 7

8. For such other and further relief as the Court may deem equitable and appropriate.

Respectfully Submitted,

Dated: June 2 8, 2016

MATHEW & GEORGE

By: _____
Sang J Park
Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby respectfully demands a jury trial.

Respectfully Submitted,

Dated: June 2 8, 2016

MATHEW & GEORGE

By: _____
Sang J Park
Attorneys for Plaintiff

Page 8

COMPLAINT

# EXHIBIT B

# CT Corporation

**Service of Process Transmittal**
07/07/2016
CT Log Number 529463337

TO:     Rebecca B Ransom, Attorney
        Raytheon Company
        870 Winter St Waltham Woods Corp Ctr
        Waltham, MA 02451-1449

RE:     **Process Served in California**

FOR:    Raytheon Company  (Domestic State: DE)



**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | JOO LEE, Pltf. vs. RAYTHEON COMPANY, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Notice(s), Instructions, Attachment(s), Stipulation(s) and Order(s) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # BC625666 |
| **NATURE OF ACTION:** | Employee Litigation - Wrongful Termination - June 16, 2015 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 07/07/2016 at 13:30 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service |
| **ATTORNEY(S) / SENDER(S):** | ABRAHAM MATHEW<br>MATHEW & GEORGE<br>500 South Grand Avenue, Suite 1490<br>Los Angeles, CA 90071<br>310-478-4349 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  Fed Ex 2 Day , 783538843280 |
| | Image SOP |
| | Email Notification,  Woods Abbott  WOODS_K_ABBOTT@RAYTHEON.COM |
| | Email Notification,  Thomas Adams  Thomas_P_Adams@raytheon.com |
| | Email Notification,  Sharon Jones  sharon.s.jones@raytheon.com |
| | Email Notification,  Kathleen Berney  kathleen.berney@raytheon.com |
| | Email Notification,  Sara Pagani  sara_m_Pagani@raytheon.com |
| **SIGNED:**<br>**ADDRESS:**<br><br><br>**TELEPHONE:** | C T Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / SH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

7-7-16
130 pm

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

RAYTHEON COMPANY, a Delaware company, and DOES 1 through
10,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOO LEE

| FOR COURT USE ONLY |
| --- |
| *(SOLO PARA USO DE LA CORTE)* |

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 3 0 2016

Sherri R. Carter, Executive Officer/Clerk

By Shaunya Bolden, Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Los Angeles Superior Court | CASE NUMBER: *(Número del Caso):* |
| --- | --- |
| 111 North Hill Street<br>Los Angeles, California 90012 | BC 6 2 5 6 6 6 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Sang J Park, Mathew & George, 500 S. Grand Ave., Ste. 1490, Los Angeles, CA 90071, (310) 478-4349

| DATE: *(Fecha)* | JUN 3 0 2016 | Clerk, by *(Secretario)* | SHAUNYA BOLDEN | , Deputy *(Adjunto)* |
| --- | --- | --- | --- | --- |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
| --- | --- | --- |

1   ABRAHAM MATHEW, SBN 181110
    *abraham@mathewandgeorge.com*
2   JACOB GEORGE, SBN 213612
    *jacob@mathewandgeorge.com*
3   SANG J PARK, SBN 232956
    *sang@mathewandgeorge.com*
4   MATHEW & GEORGE
    500 South Grand Avenue, Suite 1490
5   Los Angeles, California 90071
    Telephone:    (310) 478-4349
6   Fax:          (310) 478-9580

7   Attorneys for Plaintiff

8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10                  FOR THE COUNTY OF LOS ANGELES

11

12  JOO LEE,                          Case No.:    BC 6 2 5 6 6 6

13        Plaintiff,
                                      **COMPLAINT**
14        vs.

15  RAYTHEON COMPANY, a Delaware      (1)   Retaliation & Wrongful Termination in
    company; and DOES 1 through 10,         Violation of Lab. Code § 1102.5;
16
                                      (2)   Wrongful Termination in Violation of
17        Defendants.                       Public Policy

18
                                      **DEMAND FOR JURY TRIAL**
19

20

21

22

23

24

25

26

27

28

COMPLAINT

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 3 0 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

## JURISIDICTION AND VENUE

1.      Jurisdiction is proper in this Court by virtue of the California statutes, decisional law and regulations, and the local rules under the Los Angeles County Superior Court Rules.

2.      Venue in this Court is proper in that Raytheon Company has a principal place of business in Los Angeles County.

## PARTIES

3.      At all times Plaintiff is and has been a resident of Los Angeles County.

4.      Raytheon Company is and, at all times herein mentioned, has been a Delaware company with the capacity to sue, and to be sued, in Los Angeles County.

5.      Plaintiff is informed and believes and alleges that each of the Defendants herein were at all times the agent, employee, or representative of each remaining Defendant and were at all times herein acting within the scope and purpose of said agency and employment. Plaintiff further alleges that each Defendant—whether named or referred to as a fictitious name—supervised, ratified, controlled, adopted, directed, substantially participated in, and/or approved the acts, errors, or omissions of each remaining Defendant.

6.      The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association, or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names.  Plaintiff will request leave of court to amend this Complaint to allege their true names and capacities at such time as they are ascertained.

///

///

///

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

**FACTUAL ALLEGATIONS**

7.      Raytheon Company ("Raytheon" or "Defendants") employed Plaintiff Joo Lee as an Engineer from 1998 to June 16, 2015.  Plaintiff last earned $158,000 a year.

**Plaintiff was an outstanding employee for nearly two decades**

8.      During his 18 year tenure at Raytheon, Plaintiff consistently received excellent performance reviews and attendant pay increases.  Just three months before his termination, and in recognition of Plaintiff's invaluable contributions to Raytheon's performance, Plaintiff received his latest "excellent" performance rating and pay raise.  As always, Raytheon thanked Plaintiff for his "efforts and contributions in ensuring Raytheon's success."  Needless to say, Plaintiff was an outstanding employee that performed well until the very end.

**Raytheon instructs Plaintiff to commit timecard fraud by underreporting his hours**

9.      Raytheon is a self-proclaimed industry leader in defense and government electronics providing space, information technology, and technical services and support to the warfighter of the U.S. Armed Services and other domestic and international customers.  The U.S. Government is Raytheon's main customer.

10.     According to its mission statement, Raytheon is "committed to the principles of accurate labor recording as time worked on government programs are charged to the government and Raytheon and its employees have a legal obligation to ensure accurate recording of time."

11.     Additionally Raytheon's Code of Conduct states that "accurately charging labor, material, and other costs is essential to maintaining the integrity of customer billings, financial reporting, and planning.  Deliberate mischarging of work time or timecard fraud violates Company policy and law....Where a U.S. Government contract is affected by such mischarging, the Company is obligated by the Federal Acquisition Regulations to disclose its finding to the appropriate Inspector General."

12.     In short, Raytheon works on government contracts.  And Raytheon has to accurately account for their time billed to the government.  However, and for years, Raytheon pressured Plaintiff and other employees to commit "timecard" fraud.

Page 2

COMPLAINT

13.     As a Senior Principal Engineer, Plaintiff worked well over 40 hours a week on a project. Yet Raytheon instructed Plaintiff to report 40 hours a week only, regardless of the number of hours he actually worked.  In response to Plaintiff's complaints, Raytheon told him: "You make a lot of money....We regard you as a senior member and we expect you to work."

14.     Raytheon also instructed Plaintiff to *deduct* 30 minutes from his reporting. Again, and in response to Plaintiff's complaints, Raytheon told him that, "this is to make up for time used for restroom and coffee breaks, you know, 'inefficiency time....'"

15.     Raytheon put Plaintiff in charge of its Goleta project, and it required Plaintiff to travel from its El Segundo office to Goleta, California two to three times a week.  Although Plaintiff worked nearly 12-hour days—that included a four-hour roundtrip commute to Golita— Raytheon told Plaintiff to report nine hours of work only.

16.     Plaintiff complained to his supervisors that a nine-hour Golita work day is impossible, especially given the commute time.  Raytheon told Plaintiff, "that's your problem," and, "you can only charge nine hours."

**Raytheon's instructing Plaintiff to underreport his hours deprived him of promised wages**

17.     Plaintiff's compensation plan required Raytheon to provide him with additional pay—at his regular hourly rate—for work over 48 hours in a week.  Yet Raytheon instructed Plaintiff to underreport his hours to deprive him of his promised pay.

18.     Plaintiff complained to his supervisors about his promised wages, but Raytheon just repeatedly hassled Plaintiff that he made too much money.

**Raytheon fires Plaintiff immediately after he blows the whistle**

19.     In late May 2015 Plaintiff formally complained to Raytheon's Human Resources about the underreporting of his hours, timecard fraud, and his promised pay.

20.     On May 28, 2015 Plaintiff met with Raytheon's Human Resources Manager, Megan Weiss, about his complaints.

21.     Less than 48-hours later, on June 1, 2015, Weiss told Plaintiff that his charges were "unfounded and untrue."  Raytheon clearly failed to conduct a good faith investigation about Plaintiff's complaints given the quick 48-hour turnaround.  Also Raytheon failed to

Page 3
COMPLAINT

1   interview Plaintiff's supervisor involved in the timecard fraud because he was away on vacation

2   at that time.  Raytheon exercised bad faith in handling Plaintiff's complaints.

3       22.     Further Raytheon failed to disclose Plaintiff's complaints to the appropriate

4   Inspector General pursuant to the Federal Acquisition Regulations.

5       23.     On June 16, 2015, and after nearly twenty-years of dedicated employment,

6   Raytheon terminated Plaintiff.  Raytheon terminated Plaintiff in retaliation for his complaints

7   about underreporting his hours, timecard fraud, and his promised pay ("Protected Activity").

8                          **FIRST CAUSE OF ACTION**

9               **Retaliation and Wrongful Termination in Violation of**

10         **California Labor Code § 1102.5—Whistleblower Protection Act**

11                       **(Plaintiff against all Defendants)**

12      24.     Plaintiff incorporates all paragraphs above as though fully set forth herein.

13      25.     At all times set forth in this Complaint, Plaintiff was an employee of Raytheon

14   and DOES 1-10 and was protected by California Labor Code § 1102.5.

15      26.     At all times set forth in this Complaint, California Labor Code § 1102.5 was in

16   effect and provides, in part, that:

17      "(a)    An employer may not make, adopt, or enforce any rule, regulation, or policy

18              preventing an employee from disclosing information to…a person with

19              authority over the employee, or to another employee who has authority to

20              investigate, discovery, or correct the violation of noncompliance…where the

21              employee has reasonable cause to believe that the information discloses a

22              violation of state or federal statute, or a violation or noncompliance with a

23              local, state or federal rule or regulation….

24      (b)     An employer may not retaliate against an employee for disclosing

25              information to…a person with authority over the employee, or to another

26              employee who has authority to investigate, discovery, or correct the violation

27              of noncompliance…where the employee has reasonable cause to believe that

28              the information discloses a violation of state or federal statute, or a violation or

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

Page 4
COMPLAINT

noncompliance with a local, state or federal rule or regulation....

(c)   An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a local, state or federal rule or regulation.

(d)   An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment."

27.   As detailed above, Plaintiff engaged in his Protected Activity.  Less than two weeks after his Protected Activity, Raytheon terminated Plaintiff.

28.   Plaintiff's Protected Activity was the cause of Raytheon's decision to terminate Plaintiff's employment.

29.   By terminating Plaintiff's employment in retaliation for his Protected Activity, and as otherwise may be discovered, Defendants violated California Labor Code § 1102.5.

30.   Defendants acted with malice, oppression, and fraud and in conscious disregard for Plaintiff's rights under the law, by violating California Labor Code § 1102.5, et seq. as is set forth throughout this Complaint.

31.   As a direct and proximate result of Defendants' malicious, oppressive, fraudulent, and despicable violations of California Labor Code § 1102.5, et seq. as set forth herein, Plaintiff has suffered and continues to suffer general and special damages, the need for punitive damages, including, but not limited to the following:

(a)   Damages for severe, excruciating and traumatic emotional distress and physical manifestations of the emotional distress and exacerbation of those injuries and symptoms, all in an amount to be determined by the jury at the trial of this matter;

(b)   Damages for past loss of earnings, bonuses and benefits, in spite of continuing attempts at mitigating damages, with such damages increasing each day, plus interest in an amount to be determined by the jury at the trial of this matter;

(c)   Damages for future loss of earnings, bonuses and benefits, in spite of

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

1    continuing attempts at mitigating damages, in an amount to be determined

2    by the jury at the trial of this matter;

3    (d)    Damages for consequential financial losses and additional emotional

4    distress damages, increasing with each day in an amount to be determined

5    by the jury at the trial of this matter; and

6    (e)    The wrongful conduct of Defendants described above was intended by

7    Defendants, and each of them, to cause injury to Plaintiff and was

8    despicable, mean, and vile conduct carried on by Defendants with a

9    willful and conscious disregard of the rights of Plaintiff, subjecting him to

10    cruel and unjust hardship, and was an intentional misrepresentation and

11    concealment of material facts known to Defendants with the intent to

12    deprive Plaintiff of property, legal rights, or to otherwise cause injury,

13    such as to constitute malice, oppression, and/or fraud under Civil Code

14    section 3294, thereby entitling Plaintiff to punitive damages in an amount

15    sufficient to punish the Defendants or to make an example of Defendants

16    to prevent such conduct by others.

17    ## SECOND CAUSE OF ACTION

18    **Wrongful Termination in Violation of Public Policy**

19    **(Plaintiff against all Defendants)**

20    32.    Plaintiff incorporates all paragraphs above as though fully set forth herein.

21    33.    At all times herein mentioned in this complaint, California Labor Code §§ 1102.5

22    and 98.6 were in full force and effect and were binding on the Defendants, and the Defendants

23    were subject to their terms.  Defendants were required to refrain from violations of public

24    policy, including terminating Plaintiff in retaliation for his Protected Activity.

25    34.    Plaintiff performed competently and capably during his employment with

26    Defendants.  Nevertheless, as detailed above, Plaintiff was wrongfully terminated by

27    Defendants, and each of them, because of his Protected Activity.

28    35.    Defendants' above described conduct is in violation of various statutes and the

COMPLAINT

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

1  decisional law of this state and country, including but not limited, California Labor Code §§

2  1102.5 and 98.6.

3      36.    As a direct and legal result of Defendants' discrimination and retaliatory actions

4  against Plaintiff, Plaintiff has suffered and continues to suffer general, consequential and special

5  damages including but not limited to substantial losses in earnings, other employment benefits,

6  physical injuries, physical sickness, as well as emotional distress, plus medical expenses, future

7  medical expenses, and attorneys' fees, all to his damage in an amount according to proof.

8      37.    Said termination was wrongful and justifies the imposition of punitive damages

9  since the termination was against public policy.  Defendants intentionally discriminated and

10  retaliated against Plaintiff on account of his protected activity, and in doing so, Defendants

11  acted maliciously, fraudulently and oppressively, with the wrongful intention of injuring

12  Plaintiff.  Based upon the foregoing, Plaintiff is entitled to recover punitive damages from

13  Defendants and each of them, in an amount according to proof.

14  **PRAYER FOR RELIEF**

15  Plaintiff prays for relief against Defendants, jointly and severally, as follows:

16      1.    For special damages, including but not limited to, lost earnings, benefits and/or

17  out-of-pocket expenses in an amount according to proof at the time of trial, all in an amount set

18  forth above and/or according to proof at the time of trial;

19      2.    For further special damages, including but not limited to, lost future earnings,

20  benefits and other prospective damages in an amount set forth above and/or according to proof

21  at the time of trial;

22      3.    For general damages in an amount set forth above and/or according to proof at

23  the time of trial;

24      4.    For punitive and exemplary damages in an amount according to proof at the time

25  of trial;

26      5.    For interest;

27      6.    For reasonable attorneys' fees;

28      7.    For costs of suit; and

MATHEW & GEORGE
500 SOUTH GRAND AVENUE, SUITE 1490
LOS ANGELES, CALIFORNIA 90071

COMPLAINT

8.      For such other and further relief as the Court may deem equitable and appropriate.

Respectfully Submitted,

Dated: June 2{ , 2016          MATHEW & GEORGE

By: _____
        Sang J Park
        Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully demands a jury trial.

Respectfully Submitted,

Dated: June 2{ , 2016          MATHEW & GEORGE

By: _____
        Sang J Park
        Attorneys for Plaintiff

Page 8
COMPLAINT

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
NOTICE OF CASE ASSIGNMENT - UNLIMITED CIVIL CASE (NON-CLASS ACTION) **BC 6 25 6 66**

Case Number _____

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

Your case is assigned for all purposes to the judge indicated below. There is more information on the reverse side of this form.

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Kevin C. Brazile | 1 | 534 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Terry A. Green | 14 | 300 | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Richard Fruin | 15 | 307 | Hon. Michael J. Raphael | 51 | 511 |
| Hon. Rita Miller | 16 | 306 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Howard L. Halm | 53 | 513 |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Robert L. Hess | 24 | 314 | Hon. Michael Johnson | 56 | 514 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. John P. Doyle | 58 | 516 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Gregory Keosian | 61 | 732 |
| Hon. Samantha Jessner | 31 | 407 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Mark Mooney | 68 | 617 |
| Hon. Michael P. Linfield | 34 | 408 | Hon. William F. Fahey | 69 | 621 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Suzanne G. Bruguera | 71 | 729 |
| Hon. Marc Marmaro | 37 | 413 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Teresa Sanchez-Gordon | 74 | 735 |
| Hon. David Sotelo | 40 | 414 | Hon. Gail Ruderman Feuer | 78 | 730 |
| Hon. Holly E. Kendig | 42 | 416 | | | |
| Hon. Mel Red Recana | 45 | 529 | Hon. Steven J. Kleifield | 324 | CCW |
| Hon. Frederick C. Shaller | 46 | 500 | *Provisionally Complex Non-class Action Cases Assignment is Pending Complex Determination | 324 | CCW |
| Hon. Debre K. Weintraub | 47 | 507 | | | |

**\*Complex**

All non-class action cases designated as provisionally complex are forwarded to the Supervising Judge of the Complex Litigation Program located in the Central Civil West Courthouse (600 S. Commonwealth Ave., Los Angeles 90005), for complex/non-complex determination pursuant to Local Rule 3.3(k). This procedure is for the purpose of assessing whether or not the case is complex within the meaning of California Rules of Court, rule 3.400. Depending on the outcome of that assessment, the case may be reassigned to one of the judges of the Complex Litigation Program or reassigned randomly to a court in the Central District.

Given to the Plaintiff/Cross-Complainant/Attorney of Record on _____   SHERRI R. CARTER, Executive Officer/Clerk

By _____, Deputy Clerk

LACIV CCH 190 (Rev.06/16)                **- NOTICE OF CASE ASSIGNMENT -**                Page 1 of 2
LASC Approved 05-06                         **UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

### APPLICATION

The Chapter Three Rules were effective January 1, 1994.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES

The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE

A challenge under Code of Civil Procedure section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS

Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE

The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts.  These matters may be heard and resolved at this conference.  At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

### SANCTIONS

The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party or if appropriate on counsel for the party.

**This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is absolutely imperative.**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

**STIPULATION – DISCOVERY RESOLUTION**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

      iii.   Be filed within two (2) court days of receipt of the Request; and

      iv.   Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

Date:

_____        ➤ _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (Rev 02/15)
LASC Approved 04/11                    **STIPULATION – EARLY ORGANIZATIONAL MEETING**
For Optional Use

| SHORT TITLE: | CASE NUMBER: |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.   Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.   Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.   The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
      (INSERT DATE)                          (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.   The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case.   The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.   References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date: _____

_____          ►  _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                              FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. **This document relates to:**
   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. **Deadline for Court to decide on Request:** _____ (insert date 10 calendar days following filing of the Request).

3. **Deadline for Court to hold Informal Discovery Conference:** _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

LACIV 094 (new)
LASC Approved 04/11
For Optional Use

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | |
|---|---|

Sang J Park, SBN 232956
Mathew & George
500 South Grand Avenue, Suite 1490
Los Angeles, California 90071
TELEPHONE NO.: 310-478-4349          FAX NO.: 310-478-9580
ATTORNEY FOR *(Name):* Plaintiff Joo Lee

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Stanley Mosk Courthouse

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUN 30 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

CASE NAME:
Joo Lee v. Raytheon Company

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter    [ ] Joinder | | **BC 625666** |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[✓] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.[✓] monetary   b.[✓] nonmonetary; declaratory or injunctive relief   c.[✓] punitive

4. Number of causes of action *(specify):* Two

5. This case [ ] is [✓] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: June 28, 2016
Sang J Park, SBN 232956
_____          ▶ _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

| SHORT TITLE: Joo Lee v. Raytheon Company | CASE NUMBER |
|---|---|
| | BC 6 2 5 6 6 6 |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

> **This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ✓YES    CLASS ACTION? YES  LIMITED CASE? YES  TIME ESTIMATED FOR TRIAL 5-7 ___ HOURS/✓DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – if you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.3.

> ### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office
11. Mandatory Filing Location (Hub Case)

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

| SHORT TITLE: Joo Lee v. Raytheon Company | | CASE NUMBER | |
|---|---|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | | C<br>Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| Business Tort (07) | ☐ A6029 | Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| Civil Rights (08) | ☐ A6005 | Civil Rights/Discrimination | 1., 2., 3. |
| Defamation (13) | ☐ A6010 | Defamation (slander/libel) | 1., 2., 3. |
| Fraud (16) | ☐ A6013 | Fraud (no contract) | 1., 2., 3. |
| Professional Negligence (25) | ☐ A6017 | Legal Malpractice | 1., 2., 3. |
| | ☐ A6050 | Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| Other (35) | ☐ A6025 | Other Non-Personal Injury/Property Damage tort | 2., 3. |
| Wrongful Termination (36) | ☑ A6037 | Wrongful Termination | 1., 2., 3. |
| Other Employment (15) | ☐ A6024 | Other Employment Complaint Case | 1., 2., 3. |
| | ☐ A6109 | Labor Commissioner Appeals | 10. |
| Breach of Contract/ Warranty<br>(06)<br>(not insurance) | ☐ A6004 | Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | ☐ A6008 | Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | ☐ A6019 | Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | ☐ A6028 | Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| Collections (09) | ☐ A6002 | Collections Case-Seller Plaintiff | 2., 5., 6, 11 |
| | ☐ A6012 | Other Promissory Note/Collections Case | 2., 5, 11 |
| | ☐ A6034 | Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☐ A6015 | Insurance Coverage (not complex) | 1., 2., 5., 8. |
| Other Contract (37) | ☐ A6009 | Contractual Fraud | 1., 2., 3., 5. |
| | ☐ A6031 | Tortious Interference | 1., 2., 3., 5. |
| | ☐ A6027 | Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300 | Eminent Domain/Condemnation          Number of parcels_____ | 2. |
| Wrongful Eviction (33) | ☐ A6023 | Wrongful Eviction Case | 2., 6. |
| Other Real Property (26) | ☐ A6018 | Mortgage Foreclosure | 2., 6. |
| | ☐ A6032 | Quiet Title | 2., 6. |
| | ☐ A6060 | Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| Unlawful Detainer-Commercial (31) | ☐ A6021 | Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer-Residential (32) | ☐ A6020 | Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| Unlawful Detainer- Post-Foreclosure (34) | ☐ A6020F | Unlawful Detainer-Post-Foreclosure | 2., 6. |
| Unlawful Detainer-Drugs (38) | ☐ A6022 | Unlawful Detainer-Drugs | 2., 6. |

**Row group labels (left vertical):** Non-Personal Injury/ Property Damage/ Wrongful Death Tort; Employment; Contract; Real Property; Unlawful Detainer

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Joo Lee v. Raytheon Company | CASE NUMBER |
|---|---|

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Joo Lee v. Raytheon Company | CASE NUMBER |
|---|---|

**Item III.** *Statement of Location:* Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| **REASON:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  ☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: 2000 E El Segundo Blvd |
|---|---|

| CITY: El Segundo | STATE: CA | ZIP CODE: 90245 |
|---|---|---|

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the Stanley Mosk courthouse in the Central District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.3, subd. (a).

Dated: June 28, 2016

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/15).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 3/15)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                     FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR PLAINTIFF)

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR DEFENDANT)

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

Date:

_____      ➤ _____
(TYPE OR PRINT NAME)            (ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date:   _____        _____
                                        JUDICIAL OFFICER

# EXHIBIT C



STEPHEN E. RONK  (SBN: 164333)
ERIKA L. SHAO  (SBN: 265917)
GORDON & REES LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA  90071
Telephone:  (213) 576-5000
Facsimile:  (213) 680-4470

Attorneys for Defendant
RAYTHEON COMPANY

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

JUL 28 2016

Sherri R. Carter, Executive Officer/Clerk
By: Judi Lara, Deputy

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES – CENTRAL DISTRICT

| | |
|---|---|
| JOO LEE,<br><br>    Plaintiff,<br><br> vs.<br><br>RAYTHEON COMPANY, a Delaware corporation; and DOES 1 through 10,<br><br>    Defendants. | CASE NO. BC 625666<br><br>Judge:  Yvette M. Palazuelos<br>Dept.:  28<br><br>Complaint filed:  6/30/2016<br>Trial Date:  None Set<br><br>**DEFENDANT RAYTHEON COMPANY'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT** |

Defendant RAYTHEON COMPANY ("Defendant"), for itself alone, and in answer to

plaintiff JOO LEE's ("Plaintiff") unverified Complaint, hereby pleads:

## GENERAL DENIAL

Pursuant to Code of Civil Procedure section 431.30, Defendant generally and specifically

denies each and every allegation of Plaintiff's Complaint, and further denies that Plaintiff has

been damaged in any sum, or at all, by reason of any act or omission of this answering

Defendant.

## AFFIRMATIVE DEFENSES

Defendant, through its attorneys, asserts against Plaintiff the following separate and

DEFENDANT RAYTHEON COMPANY'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1/28916250v.1

1 distinct affirmative defenses, the applicability of which will be determined through the course of

2 investigation and discovery:

### FIRST AFFIRMATIVE DEFENSE

#### (No Cause of Action)

5     1.     For a first, separate and affirmative defense, Defendant alleges that the

6 Complaint, and each and every purported cause of action contained therein as alleged against

7 Defendant, fails to state facts sufficient to constitute any cause of action against Defendant.

### SECOND AFFIRMATIVE DEFENSE

#### (Workers Compensation Exclusivity)

10     2.     For a second, separate and affirmative defense, Defendant alleges that any and all

11 claims by Plaintiff for damages for emotional, mental and/or physical distress or injury, are

12 preempted by the Workers' Compensation Act, California Labor Code sections 3200 *et seq*., as

13 the alleged injuries arose as a result of and in the course and scope of his employment. This

14 Court lacks subject matter jurisdiction over Plaintiff's claims and/or lacks the power to grant

15 certain remedies which are within the exclusive province of the Workers' Compensation Appeals

16 Board.

### THIRD AFFIRMATIVE DEFENSE

#### (Managerial Discretion)

19     3.     For a third, separate and affirmative defense, Defendant alleges that any and all

20 decisions made and actions taken by and/or on behalf of Defendant were made and taken in the

21 exercise of proper managerial discretion and in good faith.

### FOURTH AFFIRMATIVE DEFENSE

#### (Legitimate Business Reasons)

24     4.     For a fourth, separate and affirmative defense, Defendant alleges that any and all

25 decisions made and actions taken by and/or on behalf of Defendant were based upon lawful,

26 valid and non-retaliatory business reasons.

27 ///

28 ///

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

DEFENDANT RAYTHEON COMPANY'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT

1

### FIFTH AFFIRMATIVE DEFENSE

2

### (Privilege)

3      5.      For a fifth, separate and affirmative defense, Defendant alleges that any and all

4  acts, conduct or statements by and/or attributed to Defendant were justified, undertaken in good

5  faith and/or privileged.

6

### SIXTH AFFIRMATIVE DEFENSE

7

### (Failure to Mitigate)

8      6.      For a sixth, separate and affirmative defense, Defendant alleges that any damages

9  otherwise recoverable by Plaintiff are barred and/or limited by Plaintiff's failure to exercise

10  reasonable diligence in attempting to mitigate his alleged damages.

11

### SEVENTH AFFIRMATIVE DEFENSE

12

### (Unclean Hands)

13      7.      For a seventh, separate and affirmative defense, Defendant alleges upon

14  information and belief that Plaintiff is barred by the doctrine of unclean hands from maintaining

15  this action.

16

### EIGHTH AFFIRMATIVE DEFENSE

17

### (Waiver/Estoppel/Laches)

18      8.      For an eighth, separate and affirmative defense, Defendant alleges that Plaintiff is

19  barred from obtaining the relief sought, or pursuing any of the claims raised or causes of action

20  contained in his Complaint, under the doctrines of waiver, estoppel and laches by virtue of his

21  acts, failures to act, conduct, representations, admissions, and the like.

22

### NINTH AFFIRMATIVE DEFENSE

23

### (Justified Conduct)

24      9.      For a ninth, separate and affirmative defense, Defendant alleges that, with respect

25  to the matters alleged in the Complaint, and each and every purported cause of action contained

26  therein, Defendant's conduct was justified, and, by reason of the foregoing, Plaintiff is barred

27  from any recovery against Defendant.

28  ///

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

-3-

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## TENTH AFFIRMATIVE DEFENSE

### (Compliance with Laws)

10.     For a tenth, separate and affirmative defense, Defendant alleges that it has complied with all laws and regulations with regard to the subject matter of Plaintiff's Complaint, and each and every purported cause of action contained therein, and is therefore not liable to Plaintiff for any damages he may have sustained, if any.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Protection of Economic Interest)

11.     For an eleventh, separate and affirmative defense, Defendant alleges that its conduct was privileged and that Defendant was free to pursue its own economic interest, in good faith, even though emotional distress was substantially certain to result.

## TWELFTH AFFIRMATIVE DEFENSE

### (After-Acquired Evidence Doctrine)

12.     For a twelfth, separate and affirmative defense, Defendant alleges upon information and belief that after-acquired evidence bars and/or limits the amount of damages Plaintiff can recover on his claims, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Qualifications)

13.     For a thirteenth, separate and affirmative defense, Defendant alleges that its decisions with respect to Plaintiff's employment were justified based upon its judgment of differences in individual performance, qualifications, skill, effort, experience, responsibility, merit, seniority, and/or other bona fide qualification.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Reasonable Conduct)

14.     For a fourteenth, separate and affirmative defense, Defendant alleges that all acts done by it was performed fairly, in good faith, and for a lawful purpose, and Defendant's conduct was in compliance with their obligations under applicable law.

///

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Acts or Omissions of Others)

15.    For a fifteenth, separate and affirmative defense, Defendant alleges that if Plaintiff was injured as alleged in the Complaint, he was injured by acts or omissions of persons or organizations other than Defendant, who were neither under the control of, nor in the employ of, Defendant.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Reasonable Care)

16.    For a sixteenth, separate and affirmative defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, because Defendant exercised reasonable care to prevent and correct promptly any unlawful retaliation as alleged by Plaintiff, and Plaintiff unreasonably failed to take advantage of the preventive and corrective opportunities provided by Defendant or to otherwise avoid harm.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (No Public Policy Violation)

17.    For a seventeenth, separate and affirmative defense, Defendant alleges that no employment decisions made regarding Plaintiff violated any well-defined public policy embodied in a constitution, statute or regulation.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (No Punitive Damages)

18.    For an eighteenth, separate and affirmative defense, Defendant alleges that the Complaint, and each and very purported cause of action contained therein, fails to state facts sufficient to state a claim for punitive damages against Defendant.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Additional Defenses)

19.    For a nineteenth, separate and affirmative defense, Defendant alleges that it may have other, separate, and additional defenses of which they are not presently aware, and hereby reserves the right to assert them by amendment to this answer, as allowed and permitted under

-5-

California law.

WHEREFORE, Defendant prays for judgment as follows:

1.     That Plaintiff takes nothing by reason of his Complaint on file herein, and the Complaint be dismissed with prejudice;

2.     That Defendant recovers its costs and attorneys' fees incurred herein;

3.     For interest and all sums provided by law; and

4.     For such other and further relief as this Court deems just and proper.

Dated:  July 28, 2016                                   GORDON & REES LLP

                                                        By: _____
                                                            Stephen E. Ronk
                                                            Erika L. Shao
                                                            Attorneys for Defendant
                                                            RAYTHEON COMPANY

Gordon & Rees LLP
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071

1 | **PROOF OF SERVICE**

2 |     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is: Gordon & Rees LLP 633 West Fifth Street, 52nd

3 | Floor, Los Angeles, CA 90071. On July 28, 2016, I served the within documents:

4 | **DEFENDANT RAYTHEON COMPANY'S ANSWER TO PLAINTIFF'S UNVERIFIED COMPLAINT**

5 |

6 | ☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

7 | ☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

8 |

9 | ☐ by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FedEx as part of the ordinary business practices of Gordon & Rees LLP described below, addressed as follows:

10 |

11 | ☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at Los Angeles, addressed as set forth below.

12 |

13 | Abraham Mathew
Jacob George

14 | Sang J. Park
MATHEW & GEORGE

15 | 500 S. Grand Avenue, Suite 1490
Los Angeles, CA 90071

16 | Tel: 310-478-4349
Fax: 310-478-9580

17 | Email: abraham@mathewandgeorge.com
Email: jacob@mathewandgeorge.com

18 | Email: sang@mathewandgeorge.com
**Attorneys for Plaintiff**

19 | **Joo Lee**

20 |     I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same

21 | day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage

22 | meter date is more than one day after the date of deposit for mailing in affidavit.

23 |     I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

24 |     Executed on July 28, 2016, at Los Angeles, California.

25 |

26 | _____
             Soo Arvizu

27 |

28 |

**EXHIBIT D**

# Business Entity Detail

---

Data is updated to the California Business Search on Wednesday and Saturday mornings. Results reflect work processed through Friday, July 29, 2016. Please refer to Processing Times for the received dates of filings currently being processed. The data provided is not a complete or certified record of an entity.

| | |
|---|---|
| Entity Name: | RAYTHEON COMPANY |
| Entity Number: | C0281489 |
| Date Filed: | 12/30/1953 |
| Status: | ACTIVE |
| Jurisdiction: | DELAWARE |
| Entity Address: | 870 WINTER STREET |
| Entity City, State, Zip: | WALTHAM MA 02451 |
| Agent for Service of Process: | C T CORPORATION SYSTEM |
| Agent Address: | 818 WEST SEVENTH ST STE 930 |
| Agent City, State, Zip: | LOS ANGELES CA 90017 |

\* Indicates the information is not contained in the California Secretary of State's database.

- If the status of the corporation is "Surrender," the agent for service of process is automatically revoked. Please refer to California Corporations Code section 2114 for information relating to service upon corporations that have surrendered.
- For information on checking or reserving a name, refer to Name Availability.
- For information on ordering certificates, copies of documents and/or status reports or to request a more extensive search, refer to Information Requests.
- For help with searching an entity name, refer to Search Tips.
- For descriptions of the various fields and status types, refer to Field Descriptions and Status Definitions.

Privacy Statement | Free Document Readers

Copyright © 2016   California Secretary of State

# EXHIBIT E

# _Ya-May Christle v. City of Los Angeles, et al; 2007 Mealey's CA Jury Verdicts & Settlements 2638_

BC351889

Oct. 3, 2007

**Headline:** California Jury Awards Plaintiff More Than $1M In Employment Discrimination, Retaliation Case

**Result:** $1,063,115 plaintiff verdict ($258,355 for past and future economic damages and $804,760 for past and future noneconomic damages)

**Court:** Calif. Super., Los Angeles Co.

**Judge:** William F. Fahey

**Plaintiff Profile**
_Ya-May Christle_

**Defendant Profile**
City of Los Angeles

**Plaintiff Counsel**
Bradley C. Gage and Theodore H. O'Leary, Goldberg & Gage, Woodland Hills, Calif

**Defendant Counsel**
John Sheller, Clint Robison and Wendy Chang, Hinshaw & Culbertson, Los Angeles

**Case Summary**

**Claim:** Retaliation, failure to take corrective action, whistle-blower retaliation, violation of the Peace Officers' Bill of Rights and racial discrimination

**Background:** _Ya-May Christle_, an Asian woman, was hired by the Los Angeles Police Department on or about Feb. 27, 1989, as a police officer. She was assigned to the Internal Affairs Group in April 2003, and in August 2005, the Workplace Investigation Unit was formed, where _Christle_ was an investigator and timekeeper._Christle_ alleged that on several occasions from 2003 to 2006, she was advised that certain female officers were transferred to her unit and were "special friends" of Michael Berkow, deputy chief. She alleged that in his office, Berkow had an air mattress bed, and women were seen leaving the room. _Christle_ alleged that Berkow had many intimate affairs with female police officers. She complained about the hostile work environment and unfair quid pro quo treatment and said Berkow allegedly tried to influence her Internal Affairs investigations. Afterward, she alleged that she was retaliated against, transferred, had investigations taken away and was demoted. She further claimed that her evaluation, which was delayed, was lower than it should have been, that she was not paid and that overtime was taken from her. _Christle_ alleged that because she did not have intimate relations with Berkow, she did not receive the benefits of enhancement or unlimited coveted assignments.She filed a misconduct report to the Office of the Inspector General on Feb. 3, 2005, and an investigation was made. She alleged that afterward, she was demoted.In August 2005, she allegedly saw a note on a male officer's desk promising him a week of free lunches if he could get her computer off her desk. She alleged that no action was taken when she reported the note and that the computer was removed from her desk. She reported the theft of her computer in late January 2006, and she received a message on Feb. 1, 2006, that information was being accessed from her computer for the murder investigation of Christopher Wallace, also known as Biggie Smalls. She alleged that computers were taken away from officers to conceal information, including the investigation of the Wallace case. In May 2006, _Christle_ again reported the theft of her computer, as well as the misconduct of Berkow._Christle_ alleged that because of her whistle-blower activities in reporting the misconduct, she was retaliated against by the LAPD.She sued the City of Los Angeles on May 4, 2006, in the Los Angeles County Superior Court.

Ya-May Christle v. City of Los Angeles, et al; 2007 Mealey's CA Jury Verdicts & Settlements 2638

**Other:** Sources said the trial lasted five days, and the jury deliberated about one day. The jury ruled that *Christle* was engaged in a protected activity and that the city did take adverse employment action against her. The jury also found that *Christle's* protected activity was a motivating reason for the city's adverse employment action and that its retaliatory conduct against her was a substantial factor in causing her harm and damages. As for whistle-blower retaliation, the jury ruled that *Christle* disclosed or reported information that identified any violation of laws or statutes, including those against discrimination, to a government agency or law enforcement agency, which subjected her to an adverse employment action. The jury ruled that her action was a motivating reason for the city's adverse employment actions, which was a substantial factor in causing her harm. The jury found that the city was aware of her complaints of harassment and that it took reasonable steps to address these complaints. The jury ruled that the city did not violate the Peace Officers' Bill of Rights when *Christle* was transferred to her current position. The jury also found that though *Christle* was a member of a protected class and she did suffer an adverse employment action, her race was not a motivating reason for the city's adverse employment actions.Sources said Berkow, who also had been named a defendant, was granted summary judgment two weeks before the trial.According to sources, post-trial motions for judgment notwithstanding the verdict and a new trial were filed.

**Defense:** Sources told Mealey Publications that *Christle* voluntarily requested to be transferred from her position. There was no sexual harassment or discrimination, according to sources. Sources said all policies, rules and procedures were complied with. Sources also said *Christle* was only a marginal employee. There was no support for *Christle's* various contentions.

**Plaintiff Expert(s)**
Otis Dobine, retired police lieutenant, Los Angeles, testified on policies, procedures and practices of the LAPD Stephen Riley, Ph.D., economist, San Diego, and Dr. Adib Bitar, M.D., psychiatrist, Burbank, Calif., testified

**Defendant Expert(s)**
Thomas Neches, economist, Los Angeles, testified

**Key Related Documents**
Judgment available.Document #99-071105-007R.

Verdict available.Document #99-071105-008V.

Second amended complaint available.Document #99-071105-009C.

Copyright 2007 LexisNexis, Division of Reed Elsevier Inc.
LexisNexis Jury Verdicts and Settlements Report

**End of Document**

78

1    Bradley C. Gage, Esq., S.B. No 117808
     Theodore H. O'Leary, Esq., S. B. No. 106123
2    **LAW OFFICES OF GOLDBERG & GAGE**
     A Partnership of Professional Law Corporations
3    23002 Victory Boulevard
     Woodland Hills, California 91367
4    Tel: (818) 340-9252   Fax: (818) 340-9088

5    Christopher Brizzolara, Esq., S.B. No. 130304
     **LAW OFFICES OF  CHRISTOPHER BRIZZOLARA**
6    1528  16th Street
     Santa Monica, California 90404
7    (310) 394-6447 Fax: (310) 656-7701

8    Attorneys for Plaintiff,
     YA-MAY CHRISTLE

**FILED**
LOS ANGELES SUPERIOR COURT

OCT 1 5 2007

JOHN A. CLARKE, CLERK

BY KIM SILVY, DEPUTY

RECEIVED
OCT 0 5 2007
CIVIL OPERATIONS

10                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                     **FOR THE COUNTY OF LOS ANGELES**

| | |
|---|---|
| YA-MAY CHRISTLE,                ) | CASE NO: BC351889 |
|                          ) | |
|                  Plaintiff,      ) | [Assigned for all purposes to the Hon. William F. Fahey, Dept. 78] |
|                          ) | |
| v.                             ) | [~~PROPOSED~~] **JUDGMENT** |
|                          ) | |
| CITY OF LOS ANGELES         ) | Trial Date:     September 24, 2007 |
|                          ) | Verdict Date: October 3, 2007 |
|                          ) | |
|                 Defendant    ) | Complaint Filed:     May 4, 2006 |
|                          ) | |
| _____ ) | |

22        This action came on regularly for trial on September 24, 2007, in Department 78 of the Los

23 Angeles County Superior Court, the Honorable William F. Fahey, Judge presiding.  Plaintiff Ya May

24 Christle was personally present and appeared through her attorneys, Bradley C. Gage, Esq. and Theodore

25 H. O'Leary, Esq. of Goldberg & Gage.  Defendant City of Los Angeles appeared through its attorneys,

26 John Sheller, Esq. and Clint Robison, Esq. of Hinshaw and Culbertson, LLP.

27        A jury of twelve persons and two alternates was regularly impaneled and sworn.  Witnesses were

sworn and testified, and exhibits were identified and received into evidence.

After hearing the evidence and arguments of counsel, the jury was duly instructed by the Court and the case was submitted to the jury on October 2, 2007 with direction to deliberate on the evidence and, if possible, return a verdict on the special verdict form approved by the Court. The jury deliberated and thereafter returned into court on October 3, 2007 with its verdict consisting of the special questions submitted to the jury and its answers given thereto, said verdict being in words and figures as follows, to wit:

We, the jury in the above entitled action, find the following special verdict on the questions submitted to us:

### SECTION I- FEHA RETALIATION

**Question No. 1:**   Did Plaintiff, Ya May Christle, engage in a protected activity?

Answer "Yes" or "No"as to Plaintiff.

Yes  _x_         No ____

If you answered Question 1 "yes", then answer Question 2.

If you answered Question 1 "no", sign this section and proceed to the next section.

**Question No. 2:**   Did the City of Los Angeles take any type of adverse employment action against Ya May Christle?

Answer "Yes" or "No"as to Plaintiff.

Yes _x_         No ____

If you answered Question 2 "yes", then answer Question 3.

If you answer Question 2 "no", sign this verdict section and proceed to the next section.

**Question No. 3:**   Was Ya May Christle's engagement in a protected activity a motivating reason for the City of Los Angeles' adverse employment actions?

Answer "Yes" or "No"as to Plaintiff.

Yes _x_         No ____

1 | If you answered question number 3 "Yes", then answer the following question. If you answered

2 | question number 3 "No", then sign and date this verdict section and proceed to the next section.

3

4 | **Question No. 4:** Was the City of Los Angeles' retaliatory conduct against Plaintiff, Ya May

5 | Christle, a substantial factor in causing her harm?

6 | Answer "Yes" or "No".

7 | Yes _x_    No ____

8 | Please sign and date this verdict section.

9 | Dated: October 3, 2007                    Signed:   Tara Belkin
                                                       Foreperson
10

11 | **SECTION II - WHISTLE BLOWER RETALIATION**

12

13 | **Question No. 1:**   Did Plaintiff, Ya May Christle,  disclose or report information that identified

14 | any violation of laws or statutes including those against discrimination,  to a government agency or law

15 | enforcement agency?

16 | Answer "Yes" or "No" as to Plaintiff.

17 | Yes _x_    No ____

18 | If you answered Question 1 "yes", then answer Question number 2.

19 | If you answered Question 1 "no",  sign and date this verdict section and proceed to the next

20 | section.

21 | **Question No. 2:** Was Ya May Christle thereafter subjected to an adverse employment action?

22 | Answer "Yes" or "No".

23 | Yes _x_    No ____

24 | If your answer to Question 2 was "yes", answer Question No. 3. If your answer was "no", then

25 | sign and date this verdict section.

26

27

28

1    **Question No. 3:** Was Ya May Christle's report or disclosure of information to a government

2    agency or law enforcement agency a motivating reason for the City's the adverse employment actions she

3    suffered?

4        Answer "Yes" or "No".

5            Yes _x_    No ____

6

7        **Question No. 4:** Was the City of Los Angeles' retaliation against Plaintiff, Ya May Christle, a

8    substantial factor in causing her harm?

9        Answer "Yes" or "No".

10           Yes _x_    No ____

11   Please date and sign this verdict section.

12   Dated: _October 3, 2007_                    Signed:_____Tara Belkin_____
                                                          Foreperson
13

14                    **SECTION 3 - FAILURE TO TO TAKE CORRECTIVE ACTION**

15

16   Question 1: Was the City of Los Angeles aware that Plaintiff complained of harassment?

17   Yes _X_

18   No ____

19        If your answer was "no", stop here, do not answer the remaining questions in this
         section. Have the presiding juror sign and date this verdict form, and proceed to the
20       next Section of this Verdict Form.

21        If your answer was "yes", proceed to Question 2.

22   Question 2: Did the City of Los Angeles take reasonable steps to address Plaintiff's complaint(s)?

23   Yes _X_

24   No ____

25        If you answered "no" to question 2, proceed to answer question 3.

26        If you answered "yes" to Question 2 stop here, do not answer Question 3. Have the
         presiding juror sign and date this verdict form, and proceed to the next section of this
27       Verdict Form.

28

Question 3: Did plaintiff suffer damages as a result of the City of Los Angeles's failure to take reasonable steps to address Plaintiff's complaint(s)?

Yes ____

No ____

      If you answered "yes" to question 3, proceed to question 4.

      If you answered "no" to question 3, stop here, do not answer question 4.  Have the presiding juror sign and date this verdict form, and proceed to the next section of this Verdict Form.

Question 4: Was the City's failure to take reasonable steps a substantial factor in causing harm to Ya-May Christle?

Yes ____

No ____

      If your answer to Question 4 is "no", have the presiding juror sign and date this verdict form, and proceed to the next section of this Verdict Form.

Dated: <u>October 3, 2007</u>                    <u>    Tara Belkin    </u>
                                         JURY FOREPERSON

## SECTION 4

## PEACE OFFICERS' BILL OF RIGHTS

Question 1: Did the City of Los Angeles violate the Peace Officers Bill of Rights when Ya-May Christle was transferred to her current position?

Yes ____

No __x__

      If your answer to Question 1 is "no", stop here, do not answer questions 2-4, have the presiding juror sign and date this verdict form, and proceed to the next section of this Verdict Form.

      If you answered "yes" to Question 1, proceed to Question 2.

Question 2:   Did Ya-May Christle suffer damages as a result of this violaton of the Peace Officers Bill of Rights?

Yes ____

No ____

If your answer to Question 2 is "no", stop here, do not answer question 3, have the presiding juror sign and date this verdict form, and proceed to the next section of this Verdict Form.

If you answered "yes" to Question 2, proceed to Question 3.

Question 3: Was the City of Los Angeles' violation of the Peace Officers Bill of Rights a substantial factor in causing Ya-May Christle harm?

Yes ____

No ____

If your answer to Question 3 is "no", have the presiding juror sign and date this verdict form, and proceed to the next section of the Verdict Form.

If you answered "yes" to Question 3, proceed to the next section of this Verdict Form.

Dated: <u>October 3, 2007</u>                                          <u>Tara Belkin</u>
                                                            JURY FOREPERSON


## SECTION V - FEHA RACE DISCRIMINATION

**Question No. 1:** Was Ya May Christle a member of a protected class (e.g. race)?

Answer "Yes" or "No"as to Plaintiff.

                    Yes <u>x</u>          No ____

If your answer to Question No. 1 is "Yes", proceed to Question 2.

If your answer to Question No. 1 is "No",  sign and date this verdict section and proceed to the

next section.

**Question No. 2:** Did Ya May Christle suffer an adverse employment action, for example,

demotion in rank or status, reduction in pay, denial of promotions or special assignments, a

delayed performance evaluation or taking away supervisory duties?

Answer "Yes" or "No"as to Plaintiff.

                    Yes ____          No <u>x</u>

If your answer to Question No. 2 is "Yes", proceed to Question 3.  If your answer to Question 2 is

"No", then sign and date this verdict section and proceed to the next section.

1    **Question No. 3**: Was the race of the plaintiff a motivating reason for Defendant, City of Los

2    Angeles', adverse employment actions?

3    Answer "Yes" or "No"as to Plaintiff.

4                    Yes _____    No _____

5    If your answer to Question No. 3 is "Yes", then proceed to the next Question.  If your answer to

6    Question No. 3 is "No", then sign and date this verdict section and proceed to the next section.

7

8    Please sign and date this verdict section.

9

10   Dated: October 3, 2007                   _____Tara Belkin_____
                                                  JURY FOREPERSON
11

12

13                    **VI.  TOTAL DAMAGES FOR ALL CLAIMS**

14       When you have completed all of the questions, please state the total amount of economic and non-

15   economic damages, if any, you have agreed should be awarded to Plaintiff.

16             Past and Future Economic Damages:

17                              $ 258, 355.00

18             Past and Future Non-Economic Damages:

19                              $ 804, 760.00

20   Please sign and date this verdict.

21
     Dated: October 3, 2007              Signed:_____Tara Belkin_____
22                                              Foreperson

23

24       It appearing by reason of said special verdict that Plaintiff Ya May Christle is entitled to judgment

25   against Defendant City of Los Angeles,

26       IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff Ya May Christle

27   have a judgment in her favor and recover from Defendant City of Los Angeles in the amount of

28   _____

1 | $1,063,115.00 (one million sixty three thousand, one hundred and fifteen dollars), together with costs

2 | and attorney fees according to proof.

3 |     Further, Plaintiff Ya May Christle is awarded attorney's fees in the amount of $ *ACCORDING TO PROOF*

4 | with interest thereon at the rate of seven (7%) percent per annum from the date such attorneys fees are

5 | awarded.

6 |

7 | Dated: October *15*, 2007

                _____

8 |                 The Honorable William F. Fahey
                Judge of the Superior Court

1    Dated:   October 5, 2007

Respectfully Submitted
Law Offices of Goldberg & Gage
A Partnership of Professional Law Corporations

By _____
     Bradley C. Gage
     Theodore H. O'Leary
     Attorneys for Plaintiff, Ya-May Christle

**PROOF OF SERVICE**
**1013A (3) C.C.P. Revised 05-01-88**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 23002 Victory Blvd., Woodland Hills, California 91367.

On **October 5, 2007**, I served the foregoing document described as **[PROPOSED] JUDGMENT**, on the interested parties in this action by placing ___ the original  X  a true copy thereof in sealed envelopes addressed as follows:

Clint D. Robison, Esq.
HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd., Suite 800
Los Angeles, California 90025

_X_  (VIA PERSONAL DELIVERY)

___  (BY MAIL) I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Woodland Hills, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

Executed on **October 5, 2007** at Los Angeles, California.

_X_ (STATE)  I declare under penalty of perjury that the foregoing is true and correct.

___ (FEDERAL)  I declare that I am employed in the office of a member of the made.

Tina Lara

O:\C\CHRISTLE v City of Los Angeles\TRIAL\JUDGMENT\10-04-07 Proposed Judgment.wpd

# EXHIBIT F

# _BACA, JOHN v. COUNTY OF LOS ANGELES, DEPT OF HEALTH SERVICES; 2001 Jury Verdicts LEXIS 44635_

BC183665

February, 2001

**Party Names**
Plaintiff(s):
Baca, John

Defendant(s):
County Of Los Angeles, Dept Of Health Services

**Topic:** Other - Employment Discrimination - Other - Retaliation

**Injury:** Physical Injury; Economic Injury

**Method of Resolution:** Trial

**Case Resolution:** For Plaintiff

**State:** California

**Court:** LA County Superior

**Plaintiff Counsel**
Brent Scott
Firm Name: Law Offices Of Brent Scott (San Clemente)

**Defendant Counsel**
Jeffrey M Hausman
Firm Name: Hausman & Sosa (Encino)

**Case Summary**
Employment age and race discrimination, retaliation and lost promotions resulting in emotional distress and financial loss due to missed promotion opportunities

**Plaintiff Expert(s)**
David T Barker
Address: 225 S Lake Ave Ste 700 Pasadena California 911013010
Specialty: Economics, Human Resources Policies, Statistics
Affiliation: Merrill Lynch Settle

Gale J. Schuler
Address: 275 Centennial Way Ste 107 Tustin California 92780
Phone: (714) 771-9701
Specialty: Counseling, Psychology
Affiliation: Gale J Schuler Phd Rn

**Defendant Expert(s)**
James T Long
Specialty: Psychology

BACA, JOHN v. COUNTY OF LOS ANGELES, DEPT OF HEALTH SERVICES; 2001 Jury Verdicts LEXIS 44635

**Award:** $ 151,000

**Award Details:** Trial, award for retaliation not discrimination

Copyright © 2002 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**End of Document**

# EXHIBIT G

### *April Rodriguez v. Valley Vista Services Inc., Zerep Management Corporation, and Does 1 through 100; 2013 Jury Verdicts LEXIS 2078*

BC473793

February 14, 2013

**Headline:** Employee: Company Retaliated for Her Taking Medical Leave

**Published Date:** March 18, 2013

**Topic:** Employment - Disability Discrimination - Employment - Failure to Accommodate - Employment - Wrongful Termination - Employment - Retaliation

**Injury:** Emotional Distress, Chronic Depressive Disorder, Depression

**State:** California

**Court:** Superior Court of Los Angeles County, East Los Angeles

**Plaintiff Counsel**
*Carney* R *Shegerian*
Firm Name: *Shegerian* & Associates, Inc.
Address: Santa Monica, CA
Plaintiff Name: (April Rodriguez)

Bruce Z. Kokozian
Firm Name: Kokozian & Nourmand LLP
Address: Los Angeles, CA
Plaintiff Name: (April Rodriguez)

**Defendant Counsel**
Ashley R. Leach
Firm Name: Wilson Elser Moskovitz Edelman & Dicker, LLP
Address: Los Angeles, CA
Defendant Name: (Valley Vista Services Inc., Zerep Management Corporation)

Steven J. Joffe
Firm Name: Wilson Elser Moskovitz Edelman & Dicker, LLP
Address: Los Angeles, CA
Defendant Name: (Valley Vista Services Inc., Zerep Management Corporation)

**Judge:** Susan Bryant-Deason

**Case Summary**
In December 2010, plaintiff April Rodriguez, a customer service representative for Valley Vista Services, a city of Industry-based waste disposal company, requested a leave of absence and other accommodations because she was suffering from panic attacks. Her doctor subsequently placed her on a leave of absence, but did not clear her return to work. Rodriguez was ultimately terminated from employment in January 2011.

Rodriguez sued Valley Vista Services Inc. and its parent company, Zerep Management Corp. She alleged that the defendants' actions constituted disability discrimination, a failure to accommodate, a failure to engage in the interactive process, retaliation, and wrongful termination.

April Rodriguez v. Valley Vista Services Inc., Zerep Management Corporation, and Does 1 through 100; 2013
Jury Verdicts LEXIS 2078

Rodriguez contended that during the interim week that she had not been cleared by her doctor to return to work, she attempted to reach her supervisor almost daily, but that her supervisor ignored all her attempts at communication. She also contended that when communication was later established, she was met with skepticism by her supervisor, and was fired in retaliation for her requests and for her doctor's failure to clear her to return to work.

Valley Vista and Zerep Management denied all of Rodriguez's claims, and alleged that she was terminated due to job abandonment.

**Injury Text:**

Rodriguez claimed her termination caused her extreme financial hardship. She alleged that her former husband was employed by Valley Vista, but did not contribute any spousal support or assist in raising her four children. Rodriguez also claimed she was diagnosed with major depressive disorder due to the discrimination and her termination.

Thus, Rodriguez sought recovery of $269,463 in compensatory economic damages, as well as recovery of an unspecified amount for her general damages. She also sought recovery of $16.6 million in punitive damages, claiming that the defendants acted with malice in denying her requests and terminating her from employment.

**Trial Length**

26.0 days

**Jury Deliberation**

4.0 days

**Jury Composition**

7 male, 5 female

**Jury Poll**

11-1 for initial phase; 11-1 for punitive phase

**Post Trial Status**

Plaintiff's counsel filed a motion for attorneys' fees.

| PLAINTIFF NAME | PROPERTY AWARD |
|---|---|
| April Rodriguez | $ 21,798,447 |

**Plaintiff Amounts:**

(April Rodriguez)

  $16,570,261 Personal Injury: Punitive Exemplary Damages

  $66,023 Personal Injury: Past Lost Earnings Capability

  $462,163 Personal Injury: FutureLostEarningsCapability

  $4,000,000 Personal Injury: Past Pain And Suffering

  $700,000 Personal Injury: Future Pain And Suffering

April Rodriguez v. Valley Vista Services Inc., Zerep Management Corporation, and Does 1 through 100; 2013
Jury Verdicts LEXIS 2078

**Plaintiff Expert(s)**
Tamorah Hunt, Ph.D.
Address: Santa Ana, CA
Specialty: Economics
Affiliation: Bruce Kokozian

Anthony E. Reading, Ph.D.
Address: Beverly Hills, CA
Specialty: Psychology/Counseling
Affiliation: ***Carney Shegerian***

Tamorah Hunt, Ph.D.
Address: Santa Ana, CA
Specialty: Economics
Affiliation: ***Carney Shegerian***

Warren Procci, M.D., Ph.D.
Address: Pasadena, CA
Specialty: Forensic Psychiatry
Affiliation: ***Carney Shegerian***, Bruce Kokozian

Anthony E. Reading, Ph.D.
Address: Beverly Hills, CA
Specialty: Psychology/Counseling
Affiliation: Bruce Kokozian

**Defendant Expert(s)**
Constantine M. Boukidis, M.A.
Address: Los Angeles, CA
Specialty: Economics
Affiliation: Ashley Leach

Richard B. Danehy
Address: Santa Barbara, CA
Specialty: Human Resources Policies
Affiliation: Steven Joffe

David N. Glaser, M.D.
Address: Encino, CA
Specialty: Forensic Psychiatry
Affiliation: Steven Joffe

Constantine M. Boukidis, M.A.
Address: Los Angeles, CA
Specialty: Economics
Affiliation: Steven Joffe

Richard B. Danehy
Address: Santa Barbara, CA
Specialty: Human Resources Policies
Affiliation: Ashley Leach

David N. Glaser, M.D.

April Rodriguez v. Valley Vista Services Inc., Zerep Management Corporation, and Does 1 through 100; 2013
Jury Verdicts LEXIS 2078

Address: Encino, CA
Specialty: Forensic Psychiatry
Affiliation: Ashley Leach

**Award:** $ 21,798,447

**Award Details:** The jury ruled in favor of Rodriguez and awarded her $5,228,185.92 in economic and noneconomic damages. After a phase on punitive damages, the jury found that the defendants acted with malice and awarded Rodriguez an additional $16,570,261 in punitive damages, including $7,570,261 from Valley Vista and $9 million from Zerep Management. Thus, Rodriguez's total recovery would be $21,798,446.92.

# VERDICTSEARCH

*www.verdictsearch.com/index.jsp*

Copyright 2013 ALM Media Properties, LLC.
All Rights Reserved
Further duplication without permission is prohibited
VerdictSearch
Weekly

End of Document

ERIKA SHAO

# EXHIBIT H

# *David Azzolin v. San Bernardino County Sheriff's Department; 2014 Jury Verdicts LEXIS 3575*

CIVDS1206805

March 27, 2014

**Headline:** Suit: Sheriff's Department Failed to Engage in Interactive Process

**Published Date:** May 12, 2014

**Topic:** Employment - Disability Discrimination - Employment - Failure to Accommodate - Employment - Wrongful Termination

**State:** California

**Court:** Superior Court of San Bernardino County, San Bernardino

**Plaintiff Counsel**
*Douglas* N. *Silverstein*
Firm Name: Law Offices of Kesluk, *Silverstein* & Jacob
Address: Los Angeles, CA
Plaintiff Name: (David Azzolin)

Catherine J. Roland
Firm Name: Law Offices of Kesluk, *Silverstein* & Jacob
Address: Los Angeles, CA
Plaintiff Name: (David Azzolin)

**Defendant Counsel**
Dennis E. Wagner
Firm Name: Wagner & Pelayes, LLP
Address: Riverside, CA
Defendant Name: (San Bernardino County Sheriff's Department)

**Judge:** John M. Pacheco

**Case Summary**
On Feb. 5, 2002, plaintiff David Azzolin, 31, was hired as a Range Safety Officer by the San Bernardino County Sheriff's Department, at their outdoor shooting range. During his employment, Azzolin raised concerns regarding what he believed to be hazardous levels of lead on the range.

In February 2010, Azzolin suffered a seizure while on duty and was placed on a medical leave of absence for 17 months. During his leave, Azzolin filed a worker's compensation claim, alleging lead on the range caused his seizure condition. (The Sheriff's Department denied the claim.) On July 8, 2011, Azzolin's workers' compensation doctor released Azzolin back to work with "no restrictions, capable of all job duties," but before he could return to work, the Sheriff's Department required that Azzolin attend a "Return to Work Exam" at the County Center for Employee Health & Wellness. As a result, Azzolin was examined by a county physician, Dr. Jia Li, who utilized reports from Azzolin's workers' compensation matter to impose work restrictions of no exposure to irritant chemicals and dust for three months or until further notice. Azzolin claimed the Sheriff's Department could accommodate the restrictions, but instead, without speaking to him, the Sheriff's Department sent him a letter on July 15, 2011, which stated the department could not accommodate his temporary restrictions. The letter also stated Azzolin could request an interactive process meeting to discuss any questions or concerns.

David Azzolin v. San Bernardino County Sheriff's Department; 2014 Jury Verdicts LEXIS 3575

In response to the letter, Azzolin sent an e-mail on July 27, 2011, asking for accommodation. He claimed the Sheriff's Department responded that his restrictions had not been lifted or modified to allow him to perform his job. Thereafter, Azzolin called the modified duty coordinator, Sergeant Dana Gould, and again asked for accommodation, stating 90 to 95 percent of his job could be performed without exposure to irritant chemicals or dusts (i.e., lead). However, Azzolin claimed Gould told him "the conversation is over."

On Aug. 5, 2011, Azzolin's workers' compensation attorney sent the Sheriff's Department a letter stating that Azzolin could perform his duties with accommodations.

On Sept. 2, 2011, the Sheriff's Department terminated Azzolin's employment, claiming that Azzolin failed to respond to the department's offer to engage in the interactive process and that it was necessary for the department to hire a new range safety officer to fill Azzolin's position. Azzolin's worker's compensation attorney sent another letter on Sept. 20, 2011, requesting the Sheriff's Department engage in the interactive process, to which Azzolin claimed the Sheriff's Department never responded.

Azzolin sued the San Bernardino County Sheriff's Department for disability discrimination, failure to engage in the interactive process, failure to accommodate, and wrongful termination in violation of public policy.

Azzolin claimed that the Sheriff's Department was the party that failed to engage in the interactive process, in that it made no effort to determine whether accommodating him in the position of Range Safety Officer would create an undue hardship for the department. He contended that the Sheriff's Department refused to engage in a good faith dialogue on the matter by outright denying his requests for accommodations or by not responding to letters sent by him and his workers' compensation doctor. He further contended that during the pendency of his return to work, the Sheriff's Department had already made the decision to replace him, selecting his replacement in March 2011, six months before the Sheriff's Department terminated him. As such, Azzolin claimed the Sheriff's Department had made its decision not to return him to his position well before he requested accommodation and, therefore, never had any intention of engaging in the interactive process.

The Sheriff's Department contended that it was Azzolin who failed to engage in the interactive process, in that he did not specifically request a meeting when the department offered him the opportunity in the letter dated July 15, 2011. It claimed Azzolin was hired as a contract employee for a specific task and could not be moved to another position. Thus, the Sheriff's Department claimed that Azzolin was terminated for legitimate business reasons, as he failed to engage in the interactive process and was unable to perform the duties of a Range Safety Officer.

**Injury Text:**

Azzolin claimed he has not found new employment since being terminated. He alleged even if he finds new employment, it will not be in a similar salary and benefits range when compared to his Range Safety Officer position. Azzolin also claimed he suffered emotional distress as result of the Sheriff's Department's actions.

Thus, Azzolin sought recovery of past and future lost earnings, as well as damages for his emotional distress.

**Trial Length**

1.0 month

**Jury Deliberation**

2.5 days

**Jury Composition**

9 male, 3 female

**Jury Poll**

David Azzolin v. San Bernardino County Sheriff's Department; 2014 Jury Verdicts LEXIS 3575

9-3 on liability

| PLAINTIFF NAME | PROPERTY AWARD |
| --- | --- |
| David Azzolin | $ 1,200,000 |

**Plaintiff Amounts:**

(David Azzolin)

$200,000 Personal Injury: Past Lost Earnings Capability

$750,000 Personal Injury: FutureLostEarningsCapability

$250,000 Personal Injury: emotional distress damages

**Award:** $ 1,200,000

**Award Details:** The jury ruled in favor of Azzolin and awarded him $1.2 million in total damages.

𝖭𝖛 V E R D I C T S E A R C H

*www.verdictsearch.com/index.jsp*

Copyright 2014 ALM Media Properties, LLC.
All Rights Reserved
Further duplication without permission is prohibited
Employment Vol. 10

_____

**End of Document**

ERIKA SHAO

# EXHIBIT I

### *Kelly Kasai v. Canon U.S.A. Inc., Canon Business Solutions Inc., Canon Business Solutions-West Inc., William Joseph, Does 1-100; 2008 Jury Verdicts LEXIS 31832*

BC374118

September 26, 2008

**Headline:** Plaintiff Said Facility Caused Headaches, Neurological Issues

**Published Date:** February 28, 2009

**Topic:** Employment - Wrongful Termination - Employment - Family Medical Leave Act - Employment - Retaliation

**Injury:** Emotional Distress

**State:** California

**Court:** Superior Court of Los Angeles County

**Plaintiff Counsel**
Nancy L. Abrolat
Firm Name: Abrolat & Teren
Address: El Segundo, CA
Plaintiff Name: (*Kelly Kasai*)

Kevin A. McDowell
Firm Name: Abrolat & Associates PC, Employment Law
Address: El Segundo, CA
Plaintiff Name: (*Kelly Kasai*)

**Defendant Counsel**
Karen A. Rooney
Firm Name: Steptoe & Johnson
Address: Los Angeles, CA
Defendant Name: (CBS, Canon Business Solutions-West Inc., Canon U.S.A. Inc., Joseph William)

**Judge:** Jane L. Johnson

**Case Summary**
In mid-2005, plaintiff *Kelly Kasai*, a copier sales

specialist for Canon Business Solutions Inc. (CBS), allegedly began experiencing numerous physical symptoms while working in at the company's Gardena facility. She consulted medical specialists for headaches, sinus problems and difficulty swallowing. Her symptoms also allegedly included numbness and tingling in her arms and legs, memory loss and extreme fatigue. *Kasai* claimed to have brain lesions, which plaintiff's counsel said were revealed in MRIs.

*Kasai* said that her neurological impairment related to working in the Gardena facility.

*Kasai* eventually took a medical leave in January 2006. In June, she provided a doctor's note releasing her to return to work as long as she did not enter a toxic environment, defense counsel stated.

She was terminated on Oct. 31.

*Kelly Kasai v. Canon U.S.A. Inc., Canon Business Solutions Inc., Canon Business Solutions-West Inc., William Joseph, Does 1-100; 2008 Jury Verdicts LEXIS 31832*

*Kasai* sued various Canon entities and William Joseph, who was president of Canon Business Solutions-West Inc., for wrongful termination in violation of public policy and several other claims. All but one claim was adjudicated in the defense's favor prior to trial. Joseph was dismissed with prejudice prior to trial, and the court entered summary judgment in favor of Canon U.S.A. Inc.

The case proceeded against CBS, the successor to Canon Business Solutions-West Inc.

*Kasai* claimed that she continued to complain to CBS that the office environment was causing her to become sick. She contended that, before taking her medical leave, CBS treated her with hostility and rudeness, pulled her client accounts, excluded her from key client meetings, and tripled her quota. *Kasai* further alleged that, after her medical leave, when she sought to return to work, despite the availability of sales positions at her previous level, CBS refused to return her to one of these positions and instead suggested that she apply for entry-level positions. She remained on unpaid leave for four additional months until her discharge, she said.

*Kasai* claimed that she was fired because she did not pursue entry and low-level positions. She also contended that CBS ended her employment due to her complaints about unsafe and unhealthy working conditions. She also claimed that CBS hired job candidates who were less qualified than she.

CBS noted that there was no evidence at trial that any of *Kasai*'s symptoms were caused by her work environment. The company denied any connection between *Kasai*'s illness and the facility and argued that it had no obligation or requirement to bring *Kasai* back to work when she returned from medical leave because she had exhausted her Family Medical Leave Act and California Family Rights Act leaves and had no right to reinstatement. The company claimed that it considered *Kasai* for open positions, but she never expressed an interest in returning to these jobs. Thus, the company eventually terminated her because she failed to return to work, defense counsel argued.

CBS argued that it reduced salaries for those in *Kasai*'s job classification based on the business needs of the organization, and that this change in compensation structure was the source of *Kasai*'s dissatisfaction at work.

CBS opined that there were no available specialist positions when *Kasai* returned to work. It offered *Kasai* the chance to apply for several sales management positions, but she never indicated an interest in any of these positions.

Defense counsel noted that, as *Kasai* did not want to return to work in the Gardena office, CBS provided her with an additional four-month unpaid leave of absence. During this time, available opportunities for which she was qualified were discussed. As she was not interested in those opportunities, her employment was terminated, defense counsel stated.

**Injury Text:**

*Kasai* alleged emotional distress. She also claimed damages for lost wages.

**Trial Length**

3.0 weeks

**Jury Deliberation**

4.0 hours

**Jury Poll**

10-2 on liability; 12-0 on damages

**Post Trial Status**

Both parties filed notices of appeal.

PLAINTIFF NAME                                           PROPERTY AWARD

Kelly Kasai v. Canon U.S.A. Inc., Canon Business Solutions Inc., Canon Business Solutions-West Inc., William Joseph,
Does 1-100; 2008 Jury Verdicts LEXIS 31832

**PLAINTIFF NAME**                                              **PROPERTY AWARD**

*Kelly Kasai*                                                  $ 940,000

**Plaintiff Amounts:**

(*Kelly Kasai*)

   $332,000 Personal Injury: Past Lost Earnings Capability

   $308,000 Personal Injury: FutureLostEarningsCapability

   $300,000 Personal Injury: emotional distress

**Plaintiff Expert(s)**
Richard Danhey
Address: Unknown, CA
Specialty: Human Resources Policies
Affiliation: Kevin McDowell, Nancy Abrolat

Ted Vovoulis
Address: Pasadena, CA
Specialty: Economics
Affiliation: Kevin McDowell, Nancy Abrolat

**Defendant Expert(s)**
G. Edward Anderson
Address: Los Angeles, CA
Specialty: Economics
Affiliation: Karen Rooney

**Award:** $ 940,000

**Award Details:** The jury found that CBS retaliated against *Kasai* in violation of Cal. Labor Code ???? 132(a) and 6300 et seq.

The jury awarded her $940,000.

**VERDICTSEARCH**

www.verdictsearch.com/index.jsp

Copyright 2009 ALM Media Properties, LLC.
All Rights Reserved
Further duplication without permission is prohibited
VerdictSearch
California Reporter Vol. 8

End of Document

# EXHIBIT J

Caution
As of: July 31, 2016 3:28 PM EDT

## *Muniz v. UPS*

United States Court of Appeals for the Ninth Circuit

June 14, 2013,*; December 5, 2013, Filed

No. 11-17282

---

* The panel unanimously finds this case suitable for decision without oral argument. FED. R. APP. P. 34(a)(2).

ERIKA SHAO

**Reporter**
738 F.3d 214; 2013 U.S. App. LEXIS 24189; 120 Fair Empl. Prac. Cas. (BNA) 1549; 2013 WL 6284357

KIM MUNIZ, Plaintiff-Appellee, v. UNITED PARCEL SERVICE, INC., Defendant-Appellant.

**Prior History:** [**1] Appeal from the United States District Court for the Northern District of California. D.C. No. 4:09-cv-01987-CW. Claudia Wilken, Chief District Judge, Presiding.
_Muniz v. UPS, 2011 U.S. Dist. LEXIS 94364 (N.D. Cal., Aug. 23, 2011)_

## Core Terms

district court, lodestar, limited success, reduction, fee award, inflated, spent, fee request, deduct, attorney's fees, trial court, retaliation, adjusted, calculation, declaration, demotion, hearsay, damages, gender, gender discrimination, award of attorney's fees, federal law, unsuccessful, prevailing, paralegal, argues, age discrimination, personal knowledge, multiplier, recovered

## Case Summary

### Overview
ISSUE: Whether, in an employment discrimination suit, a district court abused its discretion in awarding $697,972 in attorney fees where the jury awarded only $27,280 in damages. HOLDINGS: [1]-Admission of attorney's statement as to hours expended by a paralegal, which were contained in a spreadsheet of the total hours expended in the case, was _Fed. R. Evid. 801(c)_ hearsay, which could not support a fee award for the paralegal's time; [2]-In calculating the lodestar, the district court did not abuse its discretion in granting a greater deduction for the time spent on unsuccessful claims as the parties could not segregate the hours spent exclusively on the unsuccessful claims; [3]-There was no showing that the initial fee request was made in bad faith and was so inflated that a 10% negative multiplier was not adequate to account for limited success and possible fee request inflation.

### Outcome
Decision affirmed in part and vacated and remanded in part.

## LexisNexis® Headnotes

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > General Overview

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Appeals > Standards of Review > De Novo Review

_HN1_ Federal appellate courts review a district court's interpretation of state law in a diversity case de novo. If state substantive law governs a case, then an award of attorney fees is also governed by state law. California state law determines the standards and factors to be considered in determining an award of attorney fees in a diversity action. Appellate courts review attorney fees awarded under state law for abuse of discretion. Decisions of the California Supreme Court, including reasoned dicta, are binding on federal appellate courts as to California law. Decisions of the six district appellate courts are persuasive but do not bind each other or federal appellate courts. Federal appellate courts should nevertheless follow a published intermediate state court decision regarding California law unless convinced that the California Supreme Court would reject it.

Civil Procedure > Appeals > Standards of Review > Abuse of Discretion

Civil Procedure > Appeals > Standards of Review > De Novo Review

Evidence > Admissibility > Procedural Matters > Rulings on Evidence

_HN2_ Appellate courts review evidentiary rulings for abuse of discretion, though appellate courts review de novo a district court's interpretation of the Federal Rules of Evidence.

Civil Procedure > Appeals > Standards of Review > General Overview

_HN3_ Appellate courts may affirm on any basis supported by the record, whether or not relied upon by the district court. Accordingly, a decision of a district court may be affirmed even if the district court relied on the wrong grounds or wrong reasoning.

Civil Procedure > ... > Costs & Attorney Fees > Attorney

738 F.3d 214, *214; 2013 U.S. App. LEXIS 24189, **1

Fees & Expenses > Reasonable Fees

*HN4* An upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Statutory Attorney Fee Awards

*HN5* In general, California courts, like their federal counterparts, utilize the lodestar, or touchstone, approach to determine a proper fee award to a prevailing plaintiff in a civil rights law suit. Each attorney's reasonable hourly rate is determined, and then that rate is multiplied by the hours reasonably spent in achieving plaintiff's victory. The result is the lodestar, which may be adjusted up or down to determine an appropriate award in the individual case. In the absence of special circumstances which would make the adjusted lodestar amount unjust, it should be awarded to a prevailing plaintiff's attorneys.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

Evidence > ... > Hearsay > Rule Components > General Overview

*HN6* Declarations in support of attorney fee awards should be based upon personal knowledge.

Evidence > ... > Hearsay > Rule Components > General Overview

*HN7* Hearsay is a statement by someone who does not testify at a hearing and which is offered to prove the truth of the matter asserted in the statement. *Fed. R. Evid. 801(c)*.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

*HN8* An evidentiary basis is required for each aspect of an attorney fee award.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Degree of Success

*HN9* Under both California and federal law, a fee award must be adjusted to reflect limited success. California considers this aspect of federal law persuasive. The limited success determination has two components: first, the court must deduct from the lodestar hours spent exclusively on unrelated unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Degree of Success

*HN10* California law requires a trial court to adjust a lodestar award to account for time spent exclusively on an unsuccessful claim. It appears that California law follows federal law in evaluating such claims.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Degree of Success

*HN11* Hensley cautions that, before hours may be deducted specifically for unsuccessful claims, the claims must be suitable for entirely separate lawsuits. They must be distinct in both fact and law. In evaluating a claim for limited success under Hensley, a court must inquire whether the different claims for relief are based on different facts and legal theories. If so, they qualify as unrelated claims. To deduct time, the court must find that the time deducted did not aid in proving the successful claims.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Procedure > ... > Standards of Review > Harmless & Invited Errors > Harmless Error Rule

Civil Rights Law > ... > Procedural Matters > Costs &

738 F.3d 214, *214; 2013 U.S. App. LEXIS 24189, **1

Attorney Fees > Award Calculations

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Reasonable Fees

*HN12* California law is much more open to percentage adjustment of the lodestar up and down. Such a deduction is harmless error unless the district court double counts.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Award Calculations

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Degree of Success

*HN13* The second component of the limited success inquiry for the lodestar calculation asks whether the hours allowed were reasonably necessary to achieve the result reached.

Civil Procedure > Judicial Officers > Judges > Discretionary Powers

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Judicial Discretion

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Reasonable Fees

*HN14* California law clearly allows a trial court to reduce or deny attorney fees if it is satisfied that the fee request is unreasonably inflated. It has long been the law in California that an unreasonably inflated fee request is a special circumstance authorizing the trial court to substantially reduce or deny fees altogether. Like all special circumstances, a reduction is permitted but not required. The district court has broad discretion to determine whether an inflated fee request warrants reduction and, if so, to what extent.

Civil Procedure > Judicial Officers > Judges > General Overview

Governments > Courts > Judges

*HN15* A trial court owes the parties and a reviewing court a reasoned resolution of the factual and legal disputes presented by a case. Typically this involves finding facts and providing legal conclusions, which may be included in a written decision.

Civil Procedure > Judicial Officers > Judges > Discretionary

Powers

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > Statutory Awards

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Reasonable Fees

Civil Rights Law > ... > Procedural Matters > Costs & Attorney Fees > Statutory Attorney Fee Awards

*HN16* A trial court does not under California law abuse its discretion by simply awarding fees in an amount higher, even very much higher, than the damage awarded, where successful litigation causes conduct which California's Fair Employment and Housing Act, *Cal. Gov't Code § 12965*, was enacted to deter to be exposed and corrected.

## Syllabus

### SUMMARY[***]

### Attorneys' Fees

The panel affirmed in part and vacated in part the district court's order awarding attorneys' fees to a prevailing plaintiff under California's Fair Employment and Housing Act.

The panel held that the district court did not abuse its discretion in awarding the prevailing plaintiff $697,971.80 in attorneys' fees where the jury awarded her only $27,280 in damages. The panel held that although there was a clear disparity between the damages recovered and the fees awarded, California law did not require the district court to reduce the disparity. The panel also held that the fee award to a paralegal was based upon inadmissible hearsay. The panel remanded to the district court to reconsider the award of fees to the paralegal, and to determine an award to the plaintiff for attorneys' fees and costs incurred in defending this appeal.

Concurring in part and dissenting in part, **[**2]** Judge M. Smith agreed with the majority that the district court abused its discretion in granting paralegal fees based solely on hearsay evidence, and dissented from the remainder of the majority opinion.

---

[***] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

ERIKA SHAO

738 F.3d 214, *214; 2013 U.S. App. LEXIS 24189, **2

**Counsel:** Katherine C. Huibonhoa, Paul Hastings LLP, San Francisco, California, filed the briefs for the defendant-appellant. With her on the briefs was Ryan C. Hess, Paul Hastings LLP, San Francisco, California.

Michael von Loewenfeldt, Kerr & Wagstaffe LLP, San Francisco, California, filed the brief for the plaintiff-appellee. With him on the brief were Daniel A. Zaheer, Kerr & Wagstaffe LLP, San Francisco California, and Stephen R. Jaffe, The Jaffe Law Firm, San Francisco, California.

**Judges:** Before: Diarmuid F. O'Scannlain and Milan D. Smith, Jr., Circuit Judges, and James K. Singleton, Senior District Judge.** Opinion by Judge Singleton; Partial Concurrence and Partial Dissent by Judge Milan D. Smith, Jr.

**Opinion by:** James K. Singleton

# Opinion

[*218]  SINGLETON, Senior District Judge:

Kim Muniz sued her employer United Parcel Service, Inc., ("UPS") in California State Superior Court for employment-related [**3] discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), _California Government Code § 12900_. Muniz made no federal claim. UPS removed the case to federal court on the basis of diversity of citizenship. The case was tried to a jury which returned a verdict in Muniz's favor finding that UPS had discriminated against her on the basis of her gender and awarded her $27,280 in damages. Muniz, as a prevailing plaintiff under FEHA, sought an award of attorney fees. _Cal. Gov't Code § 12965(b)_. Muniz requested $1,945,726.50 in fees. After extensive argument, the district court awarded Muniz $697,971.80.

UPS appeals. The sole issue on appeal is whether the district court abused its discretion in awarding Muniz $697,971.80 where the jury awarded her only $27,280.

## JURISDICTION

The district court had subject matter jurisdiction over Muniz's gender discrimination claims based upon diversity of citizenship. _28 U.S.C. § 1332_. This court has jurisdiction over the final judgment under _28 U.S.C. §_ _1291_.

## STANDARDS OF REVIEW

**HN1** We review the district court's interpretation of state law in a diversity case de novo. _Stanford Ranch, Inc. v. Md. Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996)_. [**4] If state substantive law governs a case, then an award of attorney fees is also governed by state law. _Champion Produce, Inc. v. Ruby Robinson Co., 342 F.3d 1016, 1024 (9th Cir. 2003)_. California state law determines the standards and factors to be considered in determining an award of attorney fees in this diversity action. _See Winterrowd v. Am. Gen. Annuity Ins. Co., 556 F.3d 815, 827 (9th Cir. 2009)_. We [*219] review attorney fees awarded under state law for abuse of discretion. _389 Orange St. Partners v. Arnold, 179 F.3d 656, 661 (9th Cir. 1999)_. Decisions of the California Supreme Court, including reasoned dicta, are binding on us as to California law. _Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1164 (9th Cir. 1995)_. Decisions of the six district appellate courts are persuasive but do not bind each other or us. _See In re Student-Athlete Name & Likeness Licensing Litig., 724 F.3d 1268, 1278 (9th Cir. 2013)_. We should nevertheless follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it. _In re Watts, 298 F.3d 1077, 1082-83 (9th Cir. 2002)_; _Owen ex rel. Owen v. United States, 713 F.2d 1461, 1464-65 (9th Cir. 1983)_.

**HN2** "We [**5] review evidentiary rulings for abuse of discretion, though we review de novo the district court's interpretation of the Federal Rules of Evidence." _United States v. Urena, 659 F.3d 903, 908 (9th Cir. 2011)_, cert. denied, _____ U.S. _____, 132 S. Ct. 1608, 182 L. Ed. 2d 214 (2012)_.

**HN3** We may affirm on any basis supported by the record, whether or not relied upon by the district court. _Hall v. N. Am. Van Lines, Inc., 476 F.3d 683, 686 (9th Cir. 2007)_. Accordingly, the decision of the district court may be affirmed "even if the district court relied on the wrong grounds or wrong reasoning." _Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp., 159 F.3d 412, 418 (9th Cir. 1998)_.

## PRIOR PROCEEDINGS AND FACTUAL BACKGROUND[1]

---

** The Honorable James K. Singleton, Senior United States District Judge for the District of Alaska, sitting by designation.

[1] UPS did not include a transcript of the trial in its excerpts of record. This failure makes a determination regarding attorney

738 F.3d 214, *219; 2013 U.S. App. LEXIS 24189, **5

In her complaint, Muniz identified a single adverse employment action—her two-level demotion from Division Manager to Supervisor—and alleged alternative "discriminatory motives" for UPS's action in separate claims for retaliation, gender discrimination and age discrimination. Muniz contended that the wrongful discrimination was traceable in part to UPS's negligence in hiring and training its employees.

It appears that Muniz only identified one adversary in UPS management—Ron Meyer—to whom she traced all of her problems. Meyer is the only one specifically accused by Muniz of retaliation and age and gender discrimination. She does not contend that Mary Gill, the District Manager who demoted her, or UPS's other managers were gender biased or had any reason to retaliate against her. She maintains that Gill and the other managers were influenced by Meyer into taking all of the actions upon which this case is brought.

From the record provided, it appears that UPS essentially argued that Muniz was an example of what has elsewhere been called the "Peter [**7] Principle"— that she had been promoted to her level of incompetence. See LAURENCE J. PETER & RAYMOND HULL, THE PETER PRINCIPLE: WHY THINGS ALWAYS GO WRONG 7 (William Morrow ed. 1969). In line with this theory, UPS apparently argued that Meyer was simply the first to recognize Muniz's failings, and that his efforts were a reasonable attempt to persuade senior management to [*220] demote her to a position consistent with her limitations. The jury disagreed and awarded damages. UPS does not challenge the jury verdict on appeal.

On March 30, 2009, Muniz filed a complaint with the California Department of Fair Employment and Housing ("DFEH") alleging that she was demoted based on gender, age and retaliation for engaging in protected activity. The only adverse action Muniz mentioned in her state court complaint and in her administrative complaint was the two-step demotion. Her complaint about the

Manager Performance Improvement Plan ("MPIP") and the stock bonus came later. Muniz filed the instant action on April 6, 2009.

Muniz's claims for age discrimination, retaliation and punitive damages were resolved against her through summary judgment. After UPS moved for summary judgment but prior to oral [**8] argument, Muniz abandoned her age discrimination claim and no longer argued that her retaliation claim fell under FEHA as pled. Muniz sought to amend her complaint to properly allege retaliation under state labor law, but the district court held that she had waited too long and, in any event, she could not show that her reports of Fair Labor Standards Act violations in 2007 were close enough in time to permit an inference of causation regarding the adverse employment actions in 2008. Muniz's claim for negligent supervision and training survived summary judgment but was abandoned at trial. UPS concedes that the negligent supervision claim was interrelated with the gender discrimination claim.

The case went to trial on claims of gender/sex-based employment discrimination. See Muniz v. United Parcel Serv., Inc., No. 4:09-cv-019887-CW, 2011 U.S. Dist. LEXIS 94364, 2011 WL 3740808, at *1 (N.D. Cal. Aug. 23, 2011). The district court described the claims tried and the result as follows:

A jury trial was held on Plaintiff's FEHA gender discrimination claim. This claim rested on three alleged adverse actions: (1) the denial of a stock bonus; (2) her placement on the MPIP; and (3) her demotion from division manager to supervisor. [**9] The jury found that UPS's decision to deny Plaintiff a stock bonus was not motivated by her gender. It concluded that UPS's decision to place her on an MPIP, although motivated by her gender and a substantial factor in causing her harm, was made for both discriminatory and nondiscriminatory reasons and that UPS would have made the same decision for a non-discriminatory reason.[2] However,

---

fees difficult. See Maria P. v. Riles, 43 Cal. 3d 1281, 1295-96, 240 Cal. Rptr. 872, 743 P.2d 932 (Cal. 1987) (failure of appellant challenging attorney fee awards to include trial transcript in record warrants summary affirmance); Vo v. Las Virgenes Mun. Water Dist., 94 Cal. Rptr. 2d 143, 79 Cal. App. 4th 440, 447-48 (Cal. Ct. App. 2000) (same). We have prepared our statement of facts based upon the parties' [**6] submissions which we do not believe to be disputed. See Chavez v. City of Los Angeles, 47 Cal. 4th 970, 104 Cal. Rptr. 3d 710, 224 P.3d 41, 45 (Cal. 2010) (suggesting this approach).

[2] At the time this case was tried, the Ninth Circuit had held, in reliance on 1991 amendments to Title VII, that a plaintiff who proved discrimination but lost a mixed-motive case because the jury believed the employer would have made the same adverse decision in the absence of a discriminatory [**10] motive may nevertheless recover reasonable attorney fees. See Costa v. Desert Palace, Inc., 299 F.3d 838, 857 (9th Cir. 2002), aff'd, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003); Norris v. Sysco Corp., 191 F.3d 1043, 1050 (9th Cir. 1999). The jury in this case was apparently instructed in

the jury [*221] found that Plaintiff's gender motivated UPS to demote her, it was a substantial factor in causing her harm and UPS would not have demoted her for a non-discriminatory reason. The jury awarded Plaintiff $27,280.00, which was the sum of $9,990 for her lost earnings, $7,300 for her past medical expenses and $9,990 for her past non-economic loss.[3]

*Muniz, 2011 U.S. Dist. LEXIS 94364, 2011 WL 3740808, at *2*. UPS and Muniz, each claiming to be prevailing parties, sought attorney fees under FEHA, *California Government Code section 12965(b)*.[4]

UPS brought a number of post-trial motions which were decided by the trial court. In that decision, the district court also addressed both parties' request for attorney fees. The court found Muniz to be a prevailing party and rejected UPS's motion for attorney fees. The court summarized Muniz's fee request in the following table:

⊞ Go to Table1

---

conformity with federal law. At the time of the trial of Muniz's claims, the California Supreme Court was considering, but had not decided, whether California recognized a mixed-motive defense to FEHA. Early this year the California Supreme Court determined that California law was essentially the same as federal law. *Harris v. City of Santa Monica, 56 Cal. 4th 203, 152 Cal. Rptr. 3d 392, 294 P.3d 49, 51-52 (Cal. 2013)*.

It does not appear that *Harris* should affect the outcome here. While UPS terms the mixed-motive result a win for it and suggests that Muniz should not recover any fees for time spent on it, the district court apparently treated all of the gender discrimination claims as related and apparently included time spent on them in the lodestar; *Harris* supports including any time spent on challenging the MPIP decision in the award of attorney fees and on this record all of the alleged gender discrimination adverse employment claims are sufficiently related [**11] to permit a full award of attorney fees.

[3] At the close of trial, Muniz asked the jury during argument to award damages totaling over $700,000.

[4] We will consider federal cases arising under Title VII and *42 U.S.C. § 1988* to the extent California would consider them persuasive. As we shall see, however, in some respects California law differs from federal law regarding the calculation of reasonable fees based upon differences in the language of the governing statutes, and we will be sensitive to those differences. See *Chavez, 224 P.3d at 50*. HN4 "An upward or downward adjustment from the lodestar figure will be far more common under California law than under federal law." *Id. at 51 n.6* (citation omitted).

The [**12] district court considered Muniz's requested fees in determining the lodestar. Based upon the district court's review of the record, the submissions of the parties, fees awarded in other cases in the same district, and the district court's observation of Mr. Jaffe during trial and earlier proceedings, the district court reduced his requested hourly fee from $650 per hour to $445 per hour. The district court reduced Ms. Landman's requested fee from $290 to $230 and Ms. Jaffe's rate from $195 to $130 per hour. The district court left Mr. Zaheer's quoted fee intact.

Initially UPS vigorously objected to the hours claimed by the Jaffes. The district court largely agreed with UPS. It found Mr. Jaffe's record keeping inadequate and sent him back three times to improve it. The court ultimately found that Jaffe had not sufficiently proved his hours or Ms. Jaffe's hours and therefore reduced each by 20 percent. The court then multiplied the adjusted hourly rate by the adjusted [*222] hours and arrived at a lodestar award of $773,514.20. The district court reduced this amount by a further 10 percent to reflect Muniz's limited success (having recovered $27,280) and her disproportionate fee request ($2 [**13] million in fees requested versus $696,162.78 awarded),[5] resulting in an adjusted fee award of $696,162.78. The district court summarized Muniz's award for attorney fees and costs as follows:

⊞ Go to Table2

## DISCUSSION

HN5 In general, California courts, like their federal counterparts, utilize the lodestar (or "touchstone") approach to determine a proper fee award to a prevailing plaintiff in a civil rights law suit. *Chavez, 224 P.3d at 51*. Each attorney's reasonable hourly rate is determined, and then that rate is multiplied by the hours reasonably spent in achieving plaintiff's victory. *Id*. The result is the lodestar, which may be adjusted up or down to determine an appropriate award in the individual case. *Id*. In the absence [**14] of special circumstances which would make the adjusted lodestar amount unjust, it should be awarded to a prevailing plaintiff's attorneys. *Id. at 45*.

UPS has narrowly focused its appeal. It does not challenge the jury verdict. It concedes that the district

[5] The initial fee request (approximately $2 million) was approximately 73 times the damage award ($27,280). The reduced fee award of $696,162.78 is approximately 26 times the damage award.

738 F.3d 214, *222; 2013 U.S. App. LEXIS 24189, **14

court's lodestar calculation, after the reductions noted, was within its discretion except in one particular instance. UPS argues that the award of fees to paralegal Susan Jaffe was based upon inadmissible hearsay. UPS directs its primary argument to the court's treatment of Muniz's limited success and its inflated fee request, which UPS contends required a substantially greater downward adjustment.

WAS THE FEE AWARD TO PARALEGAL SUSAN JAFFE BASED UPON INADMISSIBLE HEARSAY?

*HN6* Declarations in support of attorney fee awards should be based upon personal knowledge. *Mardirossian & Assocs., Inc. v. Ersoff, 153 Cal. App. 4th 257, 62 Cal. Rptr. 3d 665, 674-75 (Cal. Ct. App. 2007)*. Ms. Jaffe did not file a declaration swearing to the hours she spent on this case. Mr. Jaffe filed a declaration (his third) which he alleged was based upon his personal knowledge and in which he stated that he had watched Ms. Jaffe reconstruct her [*223] hours using the same information he used, [**15] and that the attached spreadsheet showed her hours.

UPS objected that this statement and the accompanying spreadsheet were inadmissible hearsay. Muniz argued that Mr. Jaffe's declaration verified Ms. Jaffe's hours based upon his personal knowledge. No evidentiary hearing was held. The district court interpreted Mr. Jaffe's declaration as stating that he had personal knowledge of Ms. Jaffe's hours and tasks, that he watched her reconstruct her hours and the spreadsheet he attached to his declaration showed her hours, and that he could state from personal knowledge that the hours she put down were an approximation of those she actually expended under his supervision on the identified tasks. *See Strong v. Valdez Fine Foods, 724 F.3d 1042, 1045-47 (9th Cir. 2013)* (rejecting similar hearsay objection and finding that the declaration was an expression of "lay opinion"). Here the declaration would arguably be an expert opinion by Mr. Jaffe.

Our decision on this issue is controlled by the Federal Rules of Evidence. *HN7* Hearsay is a statement by someone who does not testify at a hearing and which is offered to prove the truth of the matter asserted in the statement. *FED. R. EVID. 801(c)*. Here the [**16] matter asserted in the statement is the hours expended by Ms. Jaffe in this case and contained in the spreadsheet. We are satisfied that the only reasonable interpretation of Mr. Jaffe's declaration is that Ms. Jaffe provided this information to him. It was therefore hearsay and the district court's conclusion to the contrary clearly mistaken.

Muniz argues that if the spreadsheet is hearsay, any error was harmless because the trial court had sufficient information to estimate hours reasonably spent by the Jaffes, and her adjusted hours reflects the district court's conclusion regarding the proper hours. *Mardirossian* analogizes the foundation for an attorney fee award in California to the rule that an injured party must show that he was injured—i.e., damaged—by persuasive evidence, but is not required to show with certainty the amount of his damage. *62 Cal. Rptr. 3d at 674-75* (precise calculations of hours spent not required; estimates based upon personal knowledge which are a fair approximation will suffice). Here, there is no question the Jaffes invested some hours in this case, and that the district court knew what tasks they performed. Mr. Jaffe certainly knew if he assigned work [**17] to Ms. Jaffe and if she completed it. Nevertheless, *Mardirossian* requires *HN8* an evidentiary basis for each aspect of an award. *Id*. In the absence of a more complete explanation from the district court regarding paralegal hours, we cannot conclude that allowing hearsay as the sole justification for an award to Ms. Jaffe was harmless.

DID THE DISTRICT COURT ABUSE ITS DISCRETION IN FAILING TO REDUCE THE FEE AWARD TO A GREATER EXTENT DUE TO LIMITED SUCCESS AND INFLATED FEES?

No reported decision of the California Supreme Court has held that a trial court abused its discretion by awarding a prevailing plaintiff in a FEHA case fees based upon the lodestar. The cases like *Chavez*, upon which UPS relies, all involve decisions upholding the trial court's discretion in adjusting the lodestar calculation and determining fees. *See 224 P.3d at 54-55*. These cases provide little support to UPS because trial court decisions are not precedential. An appellate decision upholding a particular exercise of trial court discretion does not mean that the appellate court [*224] would not have also upheld a substantially different decision.

*I. Limited success*

UPS argues that the district court did not adequately account for [**18] Muniz's limited success in this case. *HN9* Under both California and federal law, a fee award must be adjusted to reflect limited success. *Hensley v. Eckerhart, 461 U.S. 424, 440, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*; *Chavez, 224 P.3d at 53-54*. California considers this aspect of federal law persuasive. *Chavez, 224 P.3d at 53-54*. The limited success determination has two components: first, the court must deduct from the lodestar hours spent exclusively on unrelated

ERIKA SHAO

738 F.3d 214, *224; 2013 U.S. App. LEXIS 24189, **18

unsuccessful claims; and second, the court must evaluate the remaining hours to determine if they were reasonably necessary to achieve the result obtained. _Hensley, 461 U.S. at 434_; _Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1499-1500 (9th Cir. 1995)._

(a) *The district court did not abuse its discretion in failing to deduct more time for unsuccessful claims*

**HN10** California law requires a trial court to adjust a lodestar award to account for time spent exclusively on an unsuccessful claim. _Chavez, 224 P.3d at 53-54._ It appears that California law follows federal law in evaluating such claims. *See _Envtl. Prot. Info. Ctr. v. Cal. Dep't of Forestry & Fire Prot., 190 Cal. App. 4th 217, 118 Cal. Rptr. 3d 352, 368-78 (Cal. Ct. App. 2010)_ (applying limited success analysis set forth in *Hensley* [**19] v. *Eckerhart* and remanding for reevaluation of award of attorney fees under California's private attorney general fee-shifting statute); _Harman v. City & Cnty. of San Francisco, 158 Cal. App. 4th 407, 69 Cal. Rptr. 3d 750, 760-70 (Cal. Ct. App. 2007)_ (holding that, on remand, trial court did not abuse its discretion in evaluating attorney fees awarded in civil rights fee-shifting case for limited success under *Hensley v. Eckerhart*).

**HN11** *Hensley* cautions that, before hours may be deducted specifically for unsuccessful claims, the claims must be suitable for entirely separate lawsuits. _461 U.S. at 434-35_; _Schwarz v. Sec'y of Health & Human Servs., 73 F.3d 895, 901 (9th Cir. 1995)._ They must be distinct in both fact and law. _Hensley, 461 U.S. at 434-35_; _Harman, 69 Cal. Rptr. 3d at 760_ (in evaluating a claim for limited success under *Hensley*, "the court [must] inquire whether the different claims for relief . . . are based on different facts and legal theories. If so, they qualify as unrelated claims.") (citations and internal quotation marks omitted). To deduct time, the court must find that the time deducted did not aid in proving the successful claims. _Schwarz, 73 F.3d at 903-04_ (discussing _Herrington v. Cnty. of Sonoma, 883 F.2d 739, 747 (9th Cir. 1989)_). [**20] UPS points to Muniz's claims for retaliation and age discrimination, which it claims are "unrelated." The district court agreed, reasoning that the age discrimination and retaliation claims involved different legal theories than the gender discrimination claim, and that Muniz had not shown that they were related factually. The district court therefore deducted a further 10 percent from the total lodestar award on this account. UPS argues that this was not a sufficient deduction.

UPS does not attempt to estimate the actual number of hours the Jaffes could reasonably have spent on the claims for age discrimination, retaliation, negligent hire and punitive damages. UPS apparently assumes that it and the Jaffes spent an equal amount of time on each claim, whether successful or unsuccessful. UPS points to no evidence supporting this [*225] assumption. UPS argued that the district court should assume that Muniz spent as much time developing its age discrimination claim which it abandoned at summary judgment as it spent on its gender discrimination claim upon which it prevailed after a seven day jury trial. The district court properly rejected this contention, and under both federal and California [**21] law, that the jury sustained a mixed-motive defense does not preclude an award of attorney fees for that claim.

In *Corder v. Gates*, this Court criticized percentage adjustments to the lodestar amount for limited success, concluding that limited success should be addressed in the lodestar calculation by deducting specific hours. _947 F.2d 374, 378 (9th Cir. 1991)._ **HN12** California law is much more open to percentage adjustments of the lodestar up and down. *See _Chavez, 224 P.3d at 51 n.6._ In any event, *Corder* finds such a deduction harmless error unless the district court double counts, which was not done here. _947 F.2d at 378._

We are not convinced, however, that the district court was clearly wrong in failing to deduct further for them, particularly where it does not appear that either party could segregate hours spent exclusively on the unsuccessful claims. The district court was not clearly mistaken in declining to deduct a greater amount for unsuccessful claims.

(b) *The district court's implicit conclusion that the hours claimed by Muniz after deductions were reasonably incurred in order to obtain a $27,280 verdict and a determination of a gender-biased employment decision was not clearly* [**22] *mistaken*

**HN13** The second component of the limited success inquiry asks whether the hours allowed were reasonably necessary to achieve the result reached. _Hensley, 461 U.S. at 434_; _Harman, 69 Cal. Rptr. 3d at 761_. Initially we must evaluate the level of Muniz's success. Her success was not insignificant. In her initial complaint, she alleged that UPS had made one adverse employment decision by demoting her two levels from division manager to supervisor. She attributed this adverse decision to discrimination prohibited by FEHA. She offered age discrimination, gender-based discrimination and retaliation as alternate motives for the FEHA violation. The jury found that the two-step demotion was

motivated by gender bias prohibited by FEHA. Muniz asked for damages "in excess of $25,000" in her complaint. The jury awarded her $27,280. No equitable relief was sought or obtained.

UPS argues that the district court abused its discretion by failing to discuss the relationship that the damages awarded to Muniz had to the damages Muniz sought. The district court's opinion, however, makes clear that it was well aware of this relationship. The district court expressly relied on the fact that Muniz "was awarded [**23] a minimal amount for her past losses and received nothing for future economic and non-economic losses." This was not an abuse of discretion.

II. *The district court did not abuse its discretion in declining to reduce the fee request further because the initial fee request was inflated*

Muniz sought attorney fees of $1,297,151.00, enhanced by a 1.5 multiplier to $1,945,726.50. The district court denied the multiplier and ultimately awarded $696,162.78, or approximately 36 percent of the amount requested. HN14 California law clearly allows the trial court to reduce or deny attorney fees if it is satisfied that the fee request is unreasonably inflated. *Chavez, 224 P.3d at 54-55.* [*226] It has long been the law in California that an unreasonably inflated fee request is a special circumstance authorizing the trial court to substantially reduce or deny fees altogether. *Serrano v. Unruh, 32 Cal. 3d 621, 635, 186 Cal. Rptr. 754, 652 P.2d 985 (Cal. 1982).* Like all special circumstances, a reduction is permitted but not required. The district court has broad discretion to determine whether an inflated fee request warrants reduction and, if so, to what extent. In this case, the district court concluded that the fee request was inflated and recognized [**24] that it had discretion to deny all fees, but concluded that a total denial of fees or limiting the award to a nominal amount would be too severe a sanction. Instead, the district court considered the inflated fee request in reducing the lodestar by 10 percent.

UPS argues that *Chavez, 47 Cal. 4th 970, 104 Cal. Rptr. 3d 710, 224 P.3d 41*, requires a deeper cut. *Chavez* is distinguishable. Like Muniz, Chavez declined to proceed as a limited civil action in state court but, unlike Muniz, recovered less than $25,000, which under an applicable California statute permitted a reduction in awardable fees. *Id. at 45.* Here, Muniz recovered more than $25,000 and was not vulnerable to the statute permitting reduction in fees. This case would not have been appropriate for a limited civil action, and the trial court exercised its discretion to grant fees, while in

*Chavez* the court exercised its discretion to deny fees. *Id. at 55.*

UPS's reliance on *Farrar v. Hobby, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992)*, is also inapposite. *Farrar* permits but does not require a reduction in fees where only nominal or minimal damages are awarded. *Id. at 114-15.* In *Morales v. City of San Rafael, 96 F.3d 359, 362-63 (9th Cir. 1996)*, this Court concluded that a jury award of $17,500 [**25] was neither nominal or minimal. Here Muniz recovered more than $17,500.

To the extent that presenting an unreasonably inflated request for fees presents a separate issue from limited success, it is determined as of the time the request for fees is made. Here, the district court found that Muniz made an unreasonably inflated fee request. Its decision to deduct 10 percent of the lodestar was based in part on this finding. The district court believed that it had discretion under *Chavez* to deduct further or eliminate attorney fees entirely, but concluded a lesser sanction was appropriate. See *Beaty v. BET Holdings, Inc., 222 F.3d 607, 613-14 (9th Cir. 2000)* (remanding to ensure that district court understood that it had discretion to reduce fees based upon results obtained). UPS has not shown that this decision was an abuse of discretion.

In conclusion, UPS has not demonstrated that the initial fee request in this case was made in bad faith and was so inflated that a 10 percent negative multiplier was not adequate to account both for limited success and possible inflation of the fee request.

It is not clear that the dissent disputes anything we have said so far. The dissent argues that the [**26] district court failed to "show her work," which we understand to mean that the district court did not disclose the basis for her decision to deduct only 10 percent from the lodestar calculation rather than some other percentage, e.g., 5 percent, 50 percent or 90 percent, based upon its conclusion that limited success and an inflated fee request warranted a deduction from the lodestar. HN15 A trial court owes the parties and a reviewing court a reasoned resolution of the factual and legal disputes presented by a case. Typically this involves finding facts and providing legal conclusions, which may [*227] be included in a written decision as was done here. UPS does not dispute any of the trial court's findings of fact. UPS does not argue that the lodestar was improperly calculated. It presents legal arguments chiefly based upon what we have concluded was an untenable reading of *Chavez* and *Farrar*. In light of the arguments made by UPS and the record it provided, the district

court's decision was more than adequate to enable us to resolve this appeal.

Notably, UPS did not press on appeal the approach favored by the dissent. Even assuming that we should consider the matter, the district court sufficiently [**27] explained its reasoning to permit meaningful appellate review. See *Padgett v. Loventhal, 706 F.3d 1205, 1208 (9th Cir. 2013)*. In its opinion, the district court provided a helpful table to explain its calculation of the lodestar and the effect of its adjustment on that calculation. The district court also expressly discussed factors relevant to the lodestar adjustment and made clear why it believed that Muniz had obtained only limited success and submitted an inflated fee request.

## CONCLUSION

The district court recognized that it had discretion to reduce Muniz's fee award further than it did. The district court gave a clear and concise explanation of its reasoning addressing every issue that UPS asks us to consider on appeal. There is a disparity between the damages recovered and the fees awarded. We are not convinced that California law requires the trial court to reduce that disparity. See *Beaty, 222 F.3d at 612-13* (**HN16** "[A] trial court does not under California law abuse its discretion by simply awarding fees in an amount higher, even very much higher, than the damage awarded, where successful litigation causes conduct which FEHA was enacted to deter to be exposed and corrected.") (internal [**28] quotation marks omitted).

UPS has failed to demonstrate that the fee award, except to the extent it addressed paralegal fees, was clearly mistaken.

The judgment of the district court is **AFFIRMED in part and Vacated in part**, and this case is **REMANDED** to the district court 1) to reconsider an award of fees to Susan Jaffe for paralegal work on behalf of Muniz and to determine, in the first instance, whether any hearsay exception applies to Mr. Jaffe's declaration regarding fees for paralegal work in this case and 2) to determine an award to Muniz for reasonable attorney fees and costs incurred in defending this appeal.[6]

---

[6] California law allows a plaintiff to recover not only the fees incurred with respect to the underlying claim but also any fees incurred in enforcing the right to fees. *Maria P., 43 Cal. 3d at 1296*; *Ketchum, 17 P.3d at 747-48*. Muniz should recover her fees on appeal.

**Concur by:** Milan D. Smith (In Part)

**Dissent by:** Milan D. Smith (In Part)

# Dissent

M. SMITH, Circuit Judge, concurring in part and dissenting in part:

I [**29] agree with the majority that the district court abused its discretion in granting paralegal fees based solely on hearsay evidence. I respectfully dissent from the remainder of the majority opinion.

Although we review attorney fee awards for abuse of discretion, "[w]e have long held that district courts must show their work when calculating [such awards]." *Padgett v. Loventhal, 706 F.3d 1205, 1208 (9th Cir. 2013)*; *McCown v. City of Fontana, 565 F.3d 1097, 1102 (9th Cir. 2009)* ("A district court acts within its discretion in awarding fees when the amount is reasonable and the court fully explains its reasoning in making the award."). This requirement makes good sense. "Without [*228] an adequate explanation by the district court," we are unable to conduct a meaningful review of the fees awarded, and we have no way of knowing whether the district court abused its discretion. *Padgett, 706 F.3d at 1208* (citing *Ass'n of Mexican-Am. Educators v. California, 231 F.3d 572, 592-93 (9th Cir. 2000)* (en banc)). As we recently explained, "[t]he mandate that district courts show their work is all the more important in cases where, as here, there are many overlapping claims and [] mixed result[s]." *Padgett, 706 F.3d at 1209*.

Fee [**30] awards that employ across-the-board percentage reductions "are subject to heightened scrutiny. . . ." *Gates v. Deukmejian, 987 F.2d 1392, 1400 (9th Cir. 1992)*. Where the court applies an across-the-board percentage reduction in lieu of engaging in a line-by-line analysis, "[a] cursory statement" that neglects to explain why *a particular reduction* is "the correct reduction . . . does not allow for us meaningfully to assess the determination." *Id.* Accordingly, absent "a concise but clear explanation of [the court's] reasons for choosing a given percentage reduction," we have no choice but to conclude that the chosen reduction was arbitrary. *Id. at 1400-01* (internal quotation marks omitted); *see also Gonzalez v. City of Maywood, 729 F.3d 1196, 1204-05 (9th Cir. 2013)*.

Here, the district court applied a ten-percent across-the-board lodestar reduction. In so doing, the court merely

738 F.3d 214, *228; 2013 U.S. App. LEXIS 24189, **30

explained that a reduction was necessary to account for "Plaintiff's limited success." The court did not explain how it arrived at a ten-percent reduction, nor how the $697,971.80 fee award it approved after applying this reduction could have been reasonable in light of the mere $27,280.00 that plaintiff recovered **[**31]** in damages. *See Hensley v. Eckerhart, 461 U.S. 424, 436-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*. Without such an explanation, we cannot meaningfully assess the reasonableness of the fee award.

Under these circumstances, I believe we must remand for the district court to complete its work. To the degree the majority holds otherwise, it departs from and adds confusion to our well-settled jurisprudence governing the review of fee awards.

I respectfully dissent.

738 F.3d 214, *228; 2013 U.S. App. LEXIS 24189, **31

**Table1** (*Return to related document text*)

| Attorney | Hourly Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Stephen Jaffe | $650.00 | 1,610.8 | $1,047,020.00 |
| Daniel Zaheer | $350.00 | 395.2 | $138,320.00 |
| Kathryn Landman | $290.00 | 28.1 | $8,149.00 |
| Susan Jaffe | $195.00 | 531.6 | $103,662.00 |
| | | Subtotal | $1,297,151.00 |
| | Subtotal x Proposed 1.5 Lodestar Multiplier | | $1,945,726.50 |

**Table1** (*Return to related document text*)

**Table2** (*Return to related document text*)

| Attorney | Hourly Rate | Hours Billed | Total Fees |
|---|---|---|---|
| Stephen Jaffe | $445.00 | 1,288.64 | $573,444.80 |
| Daniel Zaheer | $350.00 | 395.2 | $138,320.00 |
| Kathryn Landman | $230.00 | 28.1 | $6,463.00 |
| Susan Jaffe | $130.00 | 425.28 | $55,286.40 |
| | | Subtotal | $773,514.20 |
| | Subtotal x Lodestar Reduction of 0.1 | | $696,162.78 |
| | Non-statutory costs | | $1,809.02 |
| | Total award | | $697,971.80 |

**Table2** (*Return to related document text*)

**End of Document**

ERIKA SHAO

# EXHIBIT K

# *Anice Plikaytis v. James Roth, Roth Construction Corporation, Roth Management Corporation, Talmadge East, LLC and Debra Roth; 2009 Jury Verdicts LEXIS 420374*

37-2008-00064809-CU-WT-EC

October 08, 2009

**Headline:** Deft Destroyed Pltf's Income, Squeezed Her From Project: Suit

**Published Date:** March 22, 2010

**Topic:** Employment - Wrongful Termination - Banking - Breach of Fiduciary Duty - Contracts - Breach of Contract - Contracts - Breach of Joint Venture Agreement - Business Law - Tortious Interference with a Business Relationship

**State:** California

**Court:** Superior Court of San Diego County, San Diego

**Plaintiff Counsel**
George L. de la Flor
Firm Name: Law Offices of George L. de la Flor
Address: La Mesa, CA
Plaintiff Name: (*Anice Plikaytis*)

**Defendant Counsel**
Dale R. Larabee
Firm Name: Larabee & Gruenberg
Address: San Diego, CA
Defendant Name: (James Roth)

Hans Gienapp
Firm Name: Larabee & Gruenberg
Address: San Diego, CA
Defendant Name: (James Roth)

**Judge:** Laura W. Halgren

**Case Summary**
In 1984, plaintiff *Anice Plikaytis*, 31, was hired by James Roth to work as an office assistant and project manager for his companies, Roth Management Corp. (RMC) and Roth Construction Corp. (RCC). As the sole employee, she did all the accounting, bookkeeping, clerical and managerial tasks, and over the 23 years of her employment earned more responsibility and the title CFO.

In 1985, RMC began construction on Talmadge Canyon Park, a 110-unit apartment complex in La Mesa. Investors were brought in and a limited partnership, Fairmont LP, was formed, however Roth retained a 10-percent stake in the company through RMC as well as management duties. Along the way, *Plikaytis* acquired a 1-percent stake in the project. The apartment complex was the primary work of RMC and RCC. In the mid-1990s, *Plikaytis* and Roth entered into several, two-year employment contracts. While these technically designated *Plikaytis* as an employee of RCC and RMC, her work was dedicated to the apartment complex and her pay came either indirectly or directly from Fairmont. In at least one of the contracts, Fairmont was actually designated as *Plikaytis*'s employer.

Throughout the 1990s, *Plikaytis* and Roth were periodically romantically involved with the relationship officially ending in 2001. Prior to the break-up, *Plikaytis* and Roth had discussed developing additional business. In late 2001, Roth became

Anice Plikaytis v. James Roth, Roth Construction Corporation, Roth Management Corporation, Talmadge East, LLC and Debra Roth; 2009 Jury Verdicts LEXIS 420374

interested in developing a new property. He and *Plikaytis* entered into a development agreement and formed an LLC with the sellers of the property, each maintaining at 25-percent stake in the development.

By 2003, a loan commitment had been made, but construction had not begun, requiring the sellers to subordinate to the construction lender. The sellers refused, and Roth and *Plikaytis* bought the seller's interest in the project, giving them each a 50-percent stake in Talmadge East LLC. *Plikaytis* funded her investment using at home equity line of credit, eventually borrowing a total of $350,000 against the value of her home.

The apartment complex plan was scrapped for a condominium plan, and the first until was sold in early 2007 after slow development. The housing market fell, and when the construction loan was due, the LLC did not have sufficient funding to pay the loan and stay afloat. In mid-2007, Roth and *Plikaytis* deeded units to themselves and borrowed against them, transferring a total of 12 unsold units to themselves. Roth borrowed against six. *Plikaytis* sold two, borrowed against three and did nothing with the last unit. The parties decided that they would ultimately each keep one unit and that their LLC would eventually pay the mortgages and homeowners association fees associated with the loans.

Additionally in early 2002, Roth had identified a second property near San Diego State University Campus at a rock-bottom price. He offered *Plikaytis* a 25-percent stake if she continued to work with him and assist in future management of the property.

In fall 2002, Roth began dating and eventually married Debra Kintzele, a Wal-Mart executive. When she was fired in 2005, Kintzele began to work for Roth. The plaintiff's last two-year contract expired on Dec. 31, 2006, however the business relationship was to continue until all the Talmadge East units had been sold, debts paid and capitals returned to principals.

Kintzele began doing the year-end fiscals, and reported to Roth that *Plikaytis* had overpaid herself in 2005 and 2006. *Plikaytis* denied it, contending that it was part of previously discussed compensation. The subject was dropped.

In late 2006, Roth told *Plikaytis* that he no longer wanted her as an employee of RCC and changed her employer to Fairmont and/or RMC and she continued with the same duties under the written agreement. In late 2007, Roth terminated *Plikaytis*.

Almost immediately after firing *Plikaytis*, Roth placed mechanic's liens on four units under the plaintiff's name. He also demanded that she either borrow money against the free and clear unit she held or deed it and her other units back to the LLC. *Plikaytis* began complaints of mismanagement and misappropriation of money by Roth and his companies, and demanded that no further payments be made from the LLC to RMC or RCC and asked for a written agreement prioritizing bills payable. Roth refused.

In June, Roth again demanded that she return the unit to the LLC, threatening to stop payment all mortgages on the plaintiff's behalf if she did not comply. She refused and he continued to collect rents on the plaintiff's units, but did not make payment on the mortgages. He did continue to make payment on his own units' mortgages. The plaintiff's units went into foreclosure, and the banks eventually cooperated in a short sale of the three properties.

*Plikaytis* sued Roth, Kintzele (aka Debra Roth), RMC, RCC, Talmadge East LLC and Fairmount LP. She alleged breach of contract, breach of an implied covenant not to terminate without cause, breach of fiduciary duty and interference with economic relationships. *Plikaytis* claimed that Roth had terminated her employment contract before the end of its specified run, breached the agreement relating to the second property and breached the agreement to pay her mortgage and HOA fees. She also claimed that he failed to timely develop the properties, resulting in lost profit. She claimed that Roth intentionally destroyed her income and squeezed her out of the management of Talmadge East.

The court granted Kintzele non-suit.

The defense contended that the plaintiff's employment agreement ended on Dec. 31, 2006 and that she had been terminated for overpaying herself $13,000 in 2005 and 2006. Roth also denied making *Plikaytis* a 25-percent partner in the second project at San Diego State. He claimed that a set agreement on this project would have required a financial investment from *Plikaytis*, which she did not make.

Anice Plikaytis v. James Roth, Roth Construction Corporation, Roth Management Corporation, Talmadge East, LLC and Debra Roth; 2009 Jury Verdicts LEXIS 420374

Roth furthered that *Plikaytis* had a financial obligation to deed units back to Talmadge East and that she had breached her fiduciary duty by failing to return the units. Roth filed a cross-complaint alleging the same.

**Injury Text:**

*Plikaytis* alleged that her credit score and income were destroyed. Additionally, she was unable to make payments on her home equity line of credit loan used to finance Talmadge East, putting her home at risk.

She sought recovery for lost earnings, lost profits for failure to timely develop Talmadge East, emotional distress and punitive damages.

The defense claimed that *Plikaytis* damaged her own credit score because she was given warning that the payments on the mortgage would not be made if she did not deed the units back to the LLC.

The defense further claimed that *Plikaytis* had no employment contract, as it had expired by its terms, and could not state a claim for implied contract.

The defense claimed that *Plikaytis* was not made a partner in the San Diego State project, and that Roth acted with reasonable diligence to develop the two properties under the circumstances. As to the San Diego State project, the defense claimed that it was the lawsuit that had impeded development of the latter project.

**Post Trial Status**

*Plikaytis* was awarded $195,000 in costs and $50,000 in fees. On Feb. 3, 2010, the court granted a new trial to the defendants on the limited issues of punitive and emotional distress damages. The court offered *Plikaytis* the opportunity to accept a reduced judgment in lieu of new trial and *Plikaytis* accepted. The result is a $6,969,805 total judgment. The defense filed a notice of intent to appeal.

**Plaintiff Expert(s)**
Alan N. Nevin
Address: San Diego, CA
Specialty: Real Estate
Affiliation: George de la Flor

James Wrider
Address: San Diego, CA
Specialty: Real Estate Brokerage
Affiliation: George de la Flor

Mark Berger
Address: San Diego, CA
Specialty: Appraisal
Affiliation: George de la Flor

Michael G. Willoughby, Ph.D., C.F.A.
Address: San Diego, CA
Specialty: Economics
Affiliation: George de la Flor

**Award:** $ 9,219,805

**Award Details:** The jury found for *Plikaytis* and awarded $9,219,805.

 V E R D I C T S E A R C H

Anice Plikaytis v. James Roth, Roth Construction Corporation, Roth Management Corporation, Talmadge East, LLC and Debra Roth; 2009 Jury Verdicts LEXIS 420374

www.verdictsearch.com/index.jsp

Copyright 2010 ALM Media Properties, LLC.
All Rights Reserved
Further duplication without permission is prohibited
VerdictSearch
California Reporter Vol. 9

**End of Document**

# EXHIBIT L

## *Rochana Rolfe, Ella Stewart and Margie Harris v. Los Angeles Community College District, Michael Gonzalez and James Grivich; 2002 Jury Verdicts LEXIS 58476*

BC231827

July 16, 2002

**Headline:** Black Community College Faculty Members Alleged Prejudice

**Published Date:** March 11, 2011

**Topic:** Employment - Race Discrimination - Employment - Retaliation

**Injury:** Emotional Distress

**State:** California

**Court:** Superior Court of Los Angeles County, Pomona

**Plaintiff Counsel**
Bradley C. Gage
Firm Name: Goldberg & Gage
Address: Woodland Hills, CA
Plaintiff Name: (Ella Stewart, Margie Harris, *Rochana Rolfe*)

**Defendant Counsel**
Calvin R. House
Firm Name: Gutierrez, Preciado & House
Address: Pasadena, CA
Defendant Name: (James Grivich, Los Angeles Community College District, Michael Gonzalez)

**Judge:** Andria K. Richey

**Case Summary**
The plaintiffs, *Rochana Rolfe*, Ella Stewart and Margie Harris, claimed that they were treated differently than other instructors at Los Angeles Community College because of the color of their skin. Margie Harris claimed that she was elected faculty chair in an election of nine faculty members. She believed she received the votes of a total of five of the faculty. The defendants claimed Harris only received the votes of four faculty members.

At trial, only four faculty members testified they voted for Harris. Harris claimed the reason she was not elected as faculty chair was that the votes were improperly counted and she filed a claim with the EEOC. She then went to mediation with the Community College District. *Rolfe*, a new instructor, and Stewart, a part-time instructor, attended the mediation as "witnesses." Neither woman ever testified at the mediation. They claim they were seen by James Grivich, who then retaliated against them.

Grivich recalled seeing some women at the EEOC, but claimed not to know who they were. Defendant Michael Gonzalez was not at the EEOC mediation.

After the mediation, *Rolfe*'s class schedule changed. She filed a complaint of discrimination and retaliation in September. A few weeks after that complaint, she was terminated.

The defendants claimed *Rolfe* was terminated because she did not have a master's degree and the school had a written policy, supported by statutory authority, that English instructors required a master's degree. The school claimed that hiring *Rolfe* was a mistake because she did not qualify as an English instructor; however, the school did offer her another job in the learning skills department, which did not require a master's degree. *Rolfe* refused to accept that job offer, the defendant claimed.

Rochana Rolfe, Ella Stewart and Margie Harris v. Los Angeles Community College District, Michael Gonzalez and James Grivich; 2002 Jury Verdicts LEXIS 58476

After the mediation, Stewart's class schedule changed as well. The college claimed class schedules were changed for about 12 different instructors because when Harris filled out schedules, she did it incorrectly. (She had overlapping classes and class rooms that required changes of times and locations because two or three instructors could not teach at the same time in the same class room.) Stewart did not suffer any damage because she was offered other classes to teach.

After the mediation, Harris complained that her schedule was changed as well, but the defendants argued that she did not have the proper number of classes pursuant to the union contract and that was the reason the class schedule was changed.

**Injury Text:**

The plaintiffs claimed emotional distress and loss of earnings.

*Rochana Rolfe* earned over $6,000 per year at the time she was terminated. Ella Stewart claimed a loss of earnings of over $20,000 per year, but she received a new full time job at Compton Community College. Marjie Harris retired and thus had minimal wage loss claims.

Each plaintiff allegedly incurred between $5,000 and $6,000 for psychological treatment.

Relief Sought: Back pay, front pay, general damages and punitive damages against the individuals only.

**Trial Length**

3.0 weeks

**Jury Deliberation**

4.0 days

**Jury Poll**

12-0 to 9-3 on various issues (56 different special verdict questions)

**Post Trial Status**

Post trial motions for attorney fees and case costs were granted to plaintiffs. The defendants' motions for new trial and JNOV were denied in their entirety.

Post trial, the plaintiffs offered to settle for $900,000, which the defendants rejected. At a settlement conference in Court of Appeals (defendants filed an appeal), the plaintiffs demanded $1.2 million and the defendants offered $968,000.

**Plaintiff Expert(s)**
Dorothy Tucker
Address: Los Angeles, CA
Specialty: Psychology/Counseling
Affiliation: Bradley Gage

**Award:** $ 1,261,300

**Award Details:** The jury returned a verdict of $1,261,300, including $449,000 attorney fees and an additional sum for costs.

**N** V E R D I C T S E A R C H

*www.verdictsearch.com/index.jsp*

Copyright 2011 ALM Media Properties, LLC.
All Rights Reserved
Further duplication without permission is prohibited

Rochana Rolfe, Ella Stewart and Margie Harris v. Los Angeles Community College District, Michael Gonzalez and James Grivich; 2002 Jury Verdicts LEXIS 58476

VerdictSearch
California Reporter Vol. 2

---

**End of Document**